AB-1999-1                                          1 33

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>César Andréu Ramírez<br>Carlos Rivera Vicente | Queja<br><br>99 TSPR 188 |

Número del Caso: AB-1999-1

Fecha: 20/12/1999

Abogado de César A. Andréu: Lcdo. Alvaro R. Calderón, Jr.

Abogados de Carlos Rivera Vicente: Lcdo. Iván Díaz De Aldrey

De la Oficina del Procurador General: Lcdo. Miguel A. Santana Bagur

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:

Lcdo. César Andréu Ramírez
de Arellano
Lcdo. Carlos Rivera Vicente

                         AB-1999-1




                         PER CURIAM


San Juan, Puerto Rico, a 20 de diciembre de 1999


     El presente recurso nos brinda la oportunidad de examinar el alcance del Canon 28 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, en el contexto de un pleito en el cual una de las partes es una corporación.

I

     El 25 de septiembre de 1997, la Corporación para el Fomento Económico de la Ciudad Capital (en adelante COFECC) presentó una demanda de intervención en el caso <u>Borinquen Hospitality et al</u> v. <u>Normandie Ltd. et al</u>, civil núm. KCD97-0142                                      sobre

ejecución de hipoteca. El Lcdo. César Andréu Ramírez de Arellano y el Lcdo. Carlos Rivera Vicente son los representantes legales de la parte demandada, Normandie Ltd. et al.

El 14 de diciembre de 1998 el licenciado Andréu Ramírez de Arellano le envió una carta al Sr. José M. Izquierdo Encarnación, Presidente de la Junta de Directores de COFECC (en adelante Junta) y a los demás miembros de ésta. En la misiva se les imputó responsabilidad, en su capacidad personal y como directores de COFECC, por los alegados daños causados al Normandie al "instruir, ratificar o convalidar" la intervención de COFECC en el procedimiento judicial de ejecución de hipoteca.

El presidente de la Junta, a su vez, le envió una carta al licenciado Andréu Ramírez de Arellano en la cual le indicó que cualquier comunicación o planteamiento relacionado con el caso debía dirigirse al Lcdo. Pablo Martínez Archilla, representante legal de COFECC.

De otra parte, el 30 de diciembre de 1998 el presidente de la Junta se reunió con los licenciados Andréu Ramírez de Arellano y Rivera Vicente, en ausencia del representante legal de COFECC. Acordaron dos alternativas para transigir el pleito pendiente. Posteriormente, el Lcdo. Carlos Ruiz Cox le envió una carta al abogado de COFECC en la cual le informó los acuerdos a los que se había llegado en la referida reunión y le solicitó que le informara la postura final de los miembros de la Junta.

El 22 de enero de 1999, el Sr. Carlos G. Santiago Morales, presidente ejecutivo de COFECC y representante autorizado por la Junta de Directores de la referida entidad, presentó una queja sobre conducta profesional en contra de los licenciados Andréu Ramírez de Arellano y Rivera Vicente.

A los referidos abogados se les imputó violación al Canon 28 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, el cual prohibe que un abogado se comunique con una parte adversa en ausencia de su

representante legal. Se alegó que los licenciados Andréu Ramírez de Arellano y Rivera Vicente infringieron el referido precepto ético al: (i) enviarle una carta redactada en lenguaje amenazante al presidente y a los miembros de la Junta, sin remitirle una copia al abogado de la corporación y (ii) al reunirse con el presidente de la Junta en ausencia del representante legal de COFECC.

Concedimos un término a los licenciados Andréu Ramírez de Arellano y Rivera Vicente para que se expresaran en torno a la queja. Como respuesta, adujeron que el Canon 28, supra, no aplica a los hechos ante nuestra consideración. Argumentaron, en síntesis, que la demanda de intervención fue presentada por COFECC en un proceso judicial ya existente. Por lo tanto, ni la Junta ni sus integrantes constituían propiamente la "parte contraria" en el pleito. En consecuencia, no tenían la obligación de enviar copia de la carta en controversia al abogado de COFECC y tampoco era necesario que éste estuviese presente en la reunión celebrada.

Los licenciados Andréu Ramírez de Arellano y Rivera Vicente argumentaron, además, que el propósito de la carta era informarles al presidente y a los miembros de la Junta del grave riesgo pecuniario que enfrentaban, tanto ellos como la entidad corporativa, si eran encontrados responsables por haber paralizado el procedimiento de ejecución de hipoteca. Indicaron que al comunicarse con los miembros de la Junta no tuvieron la intención de obtener ventaja ni de engañar a nadie. Añadieron que tampoco pretendían que los integrantes de la Junta firmaran documento alguno sin consultarlo previamente con el abogado de su selección.

Por último, los abogados señalaron que tanto el presidente de la Junta como sus miembros son personas con vastos conocimientos de negocios. En virtud de todo lo anterior, argumentaron que no violaron ni la letra ni el espíritu del Canon 28.

Con el beneficio de la comparencia de los licenciados Andréu Ramírez de Arellano y Rivera Vicente, remitimos el asunto a la

consideración del Procurador General, quien nos rindió su informe.
Estamos en posición de resolver sin ulteriores procedimientos.


II

El Canon 28 del Código de Etica Profesional, supra, dispone lo siguiente:

> El abogado no debe, **en forma alguna, comunicarse, negociar ni transigir con una parte representada por otro abogado en ausencia de éste.** Particularmente, debe abstenerse de aconsejar o incurrir en conducta que pueda inducir a error a una parte que no esté a su vez representada por abogado. (Énfasis suplido.)

De una lectura del referido canon surge claramente que éste proscribe, entre otras cosas, toda comunicación entre un abogado y una parte adversa que ostenta representación legal. El propósito del Canon 28 es evitar que los abogados de una parte hagan acercamientos inapropiados y antiéticos a personas debidamente representadas legalmente para obtener ventaja. También tiene por finalidad prevenir que los abogados induzcan a error a personas que carecen de representación legal. De esa manera se salvaguarda tanto el derecho de los litigantes a obtener representación legal adecuada como el privilegio abogado cliente.

Es preciso señalar que la prohibición contenida en el Canon 28 aplica independientemente del nivel de educación o escolaridad de las partes:

> Es evidente que la jerarquía profesional e intelectual del abogado vis a vis la ausencia de preparación del adversario lego, colocaría al abogado que así actúe en posición ventajosa y se le haría fácil inducir a error al adversario falto de su representación legal. Aún en casos de igualdad de circunstancias entre abogado y parte adversa, de todas formas es conducta antiética el intentar comunicarse con dicha parte adversa en ausencia de su abogado. (Énfasis nuestro.) Sarah Torres Peralta, El Derecho Notarial Puertorriqueño, Publicaciones JTP, Inc., 1995, Capítulo IV, págs. 4.67-68.

El Canon 28, supra, no define el término *parte*. Obviamente, en acciones judiciales entre personas naturales, identificar cuáles son las partes no presenta inconveniente alguno. Ahora bien, en pleitos en los que una o todas las partes son corporaciones, delimitar el alcance de dicha palabra e identificar quiénes, en efecto, son los litigantes podría conllevar algunas dificultades. Ello en vista de que las corporaciones son entidades incorpóreas administradas por personas naturales debidamente facultadas para ello.

Sabido es que las corporaciones poseen una personalidad jurídica independiente a la de sus accionistas, directores y oficiales. Srio. Daco v. Comunidad San José, Inc., 130 D.P.R. 782,798 (1992). No obstante, como regla general, actúan por conducto de directores y oficiales, encargados de dirigir sus asuntos y negocios. Como bien señala el Prof. Negrón Portillo:

> Esto debe entenderse como que la Junta de Directores es el organismo que establece la política administrativa y financiera, directrices y guías para el funcionamiento de la corporación. Luis Mariano Negrón Portillo, Derecho Corporativo Puertorriqueño, 2da ed., 1996, pág. 147.

Por lo tanto, debemos determinar si los directores y oficiales de una corporación están incluidos en el término *parte*, en el contexto del Canon 28.

Debido a la ausencia de precedentes en nuestra jurisdicción examinaremos, a modo ilustrativo, la Regla Modelo de la American Bar Association similar a nuestro Canon 28. Esta dispone lo siguiente:

> Rule 4.2 Communication with Person Represented by Counsel
>
> In representing a client, a lawyer shall not communicate about the subject of the representation with a party  the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. (Énfasis nuestro.) Annotated Model Rules of Professional Conduct, Third Ed., 1996 Rule 4.2.

El comentario a la regla citada dispone que:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party <u>concerning the matter in representation with persons having a managerial responsability on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization</u>. (Enfasis nuestro.) Annotated Model Rules of Professional Conduct, Third Ed., 1996

Del comentario citado se desprende que el término *parte*, en el contexto de la Regla 4.2, supra, no se circunscribe a la entidad corporativa. Por el contrario, se extiende para vedar que un abogado se comunique sobre asuntos relacionados con el pleito con los empleados de la corporación que: (i) poseen responsabilidades de índole gerencial, (ii) tienen facultad para obligar y vincular a la entidad corporativa y (iii) aquéllos cuyas acciones u omisiones puedan imputársele a la corporación para efectos de determinar responsabilidad civil o criminal.

De otra parte, la Regla disciplinaria DR 7-014 (A) (1) del Código de Responsabilidad Profesional de la American Bar Association también prohibe que un abogado se comunique con una parte contraria, sobre asuntos relacionados con el pleito, cuando sabe que ésta ostenta representación legal. La referida regla reza de la siguiente manera:

> DR 7-104 Communicating with One of Adverse Interest
>
> (a) During the course of his representation of a client a lawyer shall not:
>
> (1) <u>communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter</u> unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so. (Énfasis nuestro.) Model Code of Professional Responsability DR 7-104 (A)(1).

En Estados Unidos, tribunales estatales y federales así como Colegios de Abogados han desarrollado diversos criterios judiciales para delimitar el alcance de la prohibición contenida en la Regla DR 7-

014 (A) (1), en el ámbito del derecho corporativo. Uno de dichos criterios es el "group control test". Éste consiste en permitir que el abogado de la parte adversa entreviste a <u>cualquier empleado corporativo</u> que no forme parte del grupo control de la entidad. Se ha definido el grupo control como aquellas personas que pertenecen al tope gerencial ("top management") de la empresa y que tienen la responsabilidad de tomar decisiones finales. También incluye a aquel empleado cuyo rol como consejero de la corporación es de tal importancia que generalmente no se toma decisión alguna sin contar previamente con su opinión. Véase, Jerome N. Krulewitch, <u>Ex Parte Communications with Corporate Parties: The Scope of the Limitations on Attorney Communications with one of Adverse Interest</u>, 82 N. U. L. Rev. 1274.

Se ha utilizado, además, el "scope of employment test". De acuerdo con esta norma, el abogado de la parte adversa no puede entrevistar a empleado alguno sobre asuntos dentro del ámbito de su puesto. Jerome N. Krulewitch, supra, pág. 1290-91.

Otro de los criterios judiciales que se ha desarrollado para delimitar el alcance de la Regla DR 7-104 (A)(1) es el denominado "balancing test". Dicha norma consiste en tratar de reconciliar, caso a caso, los intereses en conflicto, éstos son: el derecho a una representación legal adecuada y la importancia de que los abogados puedan descubrir los hechos de un caso mediante entrevistas informales a empleados corporativos. Jerome N. Krulewitch, supra, pág. 1294-95

Por último, se ha utilizado el "managing speaking test". Para efectos de dicha norma judicial, sólo se consideran partes del litigio aquellos empleados que poseen autoridad para vincular a la corporación o para hablar en nombre de ésta. El Comité de Ética de la American Bar Association, por su parte, adoptó una regla homóloga al "managing speaking test", la cual se ha denominado "alter ego test". De acuerdo con dicha norma, si el empleado puede obligar a la corporación debido a la autoridad que posee, entonces, como alter ego de ésta, se considera

*parte* en la acción judicial, en el contexto de la regla disciplinaria. Jerome N. Krulewitch, supra, pag. 1298-1302.

Observamos que <u>todos</u> los criterios judiciales examinados reconocen que existen circunstancias en las que, a pesar de la personalidad jurídica independiente de la corporación, los directores, empleados u oficiales de ésta podrían constituir una extensión de la misma.

Por lo tanto, para efectos de la regla disciplinaria, deben ser considerados *parte* de una acción judicial instada por o contra la entidad corporativa. En consecuencia, los abogados de la parte adversa están impedidos de comunicarse con dichas personas sobre asuntos relacionados con el pleito, en ausencia de su representante legal.

La determinación de si un empleado, director u oficial corporativo es parte de la acción judicial se ha hecho tomando en cuenta factores como: el cargo que ocupa, su poder para tomar decisiones, su autoridad para vincular a la corporación o para hablar en nombre de ésta. También se ha considerado <u>el asunto</u> sobre el cual versa la comunicación, es decir, si está inherentemente relacionado con la controversia judicial.

Teniendo en cuenta los pronunciamientos anteriormente esbozados, no cabe duda de que estamos ante una comunicación hecha a una parte adversa.


III

Según ya expresáramos, el licenciado Andréu Ramírez de Arellano le envió una carta al presidente y a los integrantes de la Junta de COFECC con el propósito de que la corporación desistiese de intervenir en un pleito de ejecución de hipoteca.[1] Posteriormente, tanto el licenciado Andréu Ramírez de Arellano como el licenciado Rivera Vicente se

---

[1] En la carta se le concedió a la Junta el término de tres (3) días para que convocasen una reunión extraordinaria en la que tratasen, entre otros asuntos, el desistimiento voluntario y con perjuicio de la demanda de intervención.

reunieron con el presidente de la Junta, en ausencia del abogado de COFECC.

Como bien señaló el Procurador General, a pesar de que constituye un principio básico del derecho corporativo que las corporaciones poseen personalidad jurídica separada de sus directores, accionistas y oficiales, resulta innegable que la realidad funcional de éstas les impide transigir pleitos, comunicarse o hacer negocios si no es por conducto de las personas naturales que dirigen sus negocios. Por lo tanto, el hecho de que una entidad corporativa sea la parte nominal en una acción judicial, no excluye la posibilidad de que existan personas, por ejemplo, empleados de la corporación, quienes por razón de las funciones que desempeñan y por su autoridad para vincular y para hablar en nombre de la corporación, deban considerarse parte del pleito. Por ende, están incluidos en la prohibición establecida por el Canon 28. La determinación a la que llegamos salvaguarda el derecho de las corporaciones a obtener una representación legal adecuada.

Los licenciados Andréu Ramírez de Arellano y Rivera Vicente obviamente sabían que COFFEC actuaba mediante su Junta y es precisamente por esa razón que le solicitaron a sus integrantes que desistiesen de la demanda de intervención. Prueba de ello se desprende de la carta objeto de la presente controversia, la cual indica que la Junta causó daños al Normandie al **"instruir, ratificar o convalidar**, el acto de intervención judicial."** Un fragmento de la misiva lee de la siguiente forma:

> (1) Por último, las acciones judiciales le pertenecen a las partes y no a los abogados de [é]stas quienes meramente conducen los procedimientos ante los tribunales. El control de todo litigio le corresponde a la parte y no basta con contratar abogados y transferirles la responsabilidad absoluta de ejercer criterios esencialmente ministeriales y de política pública del cliente. Así hacerlo resulta en un abandono de responsabilidad. Los directores de COFECC no pueden escudarse ni rehusar el descargo de su responsabilidad por el mero hecho de que una controversia se está tramitando ante un tribunal sino que por el contrario deben supervisar la conducción de las alegaciones y estar enterados de

> todas sus implicaciones y consecuencias. Permitir
> que un pleito continúe su curso sin supervisión
> equivale a una indebida delegación de funciones y
> es un acto ultra-vires que le puede causar daños,
> como en este caso, no solamente a las otras partes,
> sino a COFFEC propiamente dicho. (Énfasis
> suplido.)

Indudablemente, de lo anterior surge que los licenciados Andréu Ramírez de Arellano y Rivera Vicente se comunicaron con los integrantes y con el presidente de la Junta para discutir asuntos inherentemente relacionados con la demanda instada por COFECC. Ello, precisamente, porque éstos eran las personas con la autoridad y el poder para desistir del pleito. Incluso, del lenguaje y de los términos en que está redactado el fragmento citado parece desprenderse que, en efecto, los licenciados querían tratar el asunto del desistimiento directamente con los miembros de la Junta y no con el abogado de COFECC. Por lo tanto, resulta ilógico argumentar que era permisible discutir con los miembros de la Junta asuntos relacionados con la demanda instada por COFECC precisamente por instrucciones de su Junta, en ausencia del abogado de la corporación demandante, sin que ello infrinja el precepto ético contenido en el Canon 28. No podemos avalar la postura de los licenciados Andréu Ramírez de Arellano y Rivera Vicente de que la única parte en el pleito era COFECC.

Dadas las circunstancias del caso ante nuestra consideración, concluimos que el presidente y los integrantes de la Junta eran parte de la acción judicial instada por COFFEC. Por lo tanto, los licenciados Andréu Ramírez de Arellano y Rivera Vicente debieron abstenerse de comunicarse directamente con éstos, en ausencia del representante legal de la referida corporación. En consecuencia, estamos frente a una violación del Canon 28, supra.

Sólo nos resta expresarnos en torno a la alegación de que la carta en controversia fue redactada en un "lenguaje amenazante con el propósito de intimidar a los miembros de la Junta y así disuadir a COFECC de ejercer sus derechos ante los Tribunales". Los licenciados

Andréu Ramírez de Arellano y Rivera Vicente, por su parte, señalaron que la carta no era amenazante y que el lenguaje utilizado es de uso común entre los abogados.

Tras una lectura de la misiva y de los documentos que obran en autos entendemos que la carta no tenía el propósito de intimidar a los miembros de la Junta, ni está redactada con lenguaje amenazante. No obstante resulta evidente que, como personas legas, los integrantes de la Junta no necesariamente tenían que comprender el verdadero alcance o las consecuencias de la comunicación suscrita por el licenciado Andréu Ramírez de Arellano y era comprensible que se sintieran intimidados por ésta. Dicho malentendido se pudo haber evitado, precisamente, si se hubiese cumplido con el precepto ético contenido en el Canon 28 y se les hubiese enviado la misiva por conducto del abogado de COFECC.

Por consiguiente, bajo las circunstancias particulares de este caso y en vista de que es la primera vez que nos expresamos sobre el particular, aplicaremos prospectivamente la norma establecida. Esto es, la misma no será aplicada a los Lcdos. Andréu Ramírez de Arellano y Rivera Vicente.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Lcdo. César Andréu Ramírez
de Arellano
Lcdo. Carlos Rivera Vicente
                                    AB-1999-1

SENTENCIA

San Juan, Puerto Rico, a 20 de diciembre de 1999

A tenor con la Per Curiam que antecede, la norma establecida será de aplicación prospectiva.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García disiente en cuanto a la prospectividad de la norma, la cual no se justifica, amén de la ausencia de criterios al respecto para evaluar en el futuro, uniformemente y con la misma vara judicial asuntos disciplinarios. El Juez Asociado señor Fuster Berlingeri no intervino. El Juez Presidente señor Andréu García está inhibido.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo