EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>    Luis Martínez Lloréns | 2003 TSPR 14<br><br>158 DPR ____ |

Número del Caso: AB-2002-182

Fecha: 13 de febrero de 2003

Oficina de Procurador General:

                Roberto J. Sánchez Ramos
                Procurador General

                Lcda. Vanesa Lugo Flores
                Procuradora General

                Lcda. Noemí Rivera de León
                Procuradora General Auxiliar

Abogado de la Parte Querellada:

                Por Derecho Propio

Materia: QUEJA

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Luis Martínez Lloréns      AB-2002-182        Conducta
                                             Profesional

PER CURIAM

San Juan, Puerto Rico, a 13 de febrero de 2003

El 27 de junio de 2002 el Sr. Manuel A. Novas Dueño presentó ante la Secretaria General del Tribunal Supremo, una queja jurada en contra del abogado Luis Martínez Lloréns. Adujo que el licenciado Martínez Lloréns representa la parte contraria en un caso en su contra, <u>Matta Enríquez y otros v. Caparra Town Park Inc. y otros</u>, Civil Núm. 98-9564 (506), ante el Tribunal de Primera Instancia, Sala de San Juan, y que intentó comunicarse con él para transigir el caso en ausencia de su abogado representante.

En síntesis, el Sr. Novas Dueño alegó que el abogado querellado se personó a su oficina el 19

de junio de 2002, insistió en discutir con él aspectos del referido caso e intentó negociar un plan de pago sobre cierta deuda. Señaló además, que su esposa se encontraba presente en ese momento y ella sintió gran consternación al ver al abogado de la parte contraria tocando personalmente su puerta para cobrar. Según el Sr. Novas Dueño, el querellado le había enviado cartas por fax cobrando la deuda. El señor querellante expresó que el propósito de la visita del querellado fue amedrentarlo para obtener un pago; que por ello se limitó a decirle que se comunicara con su abogado, el Lic. Novas Debién.

El 2 de agosto de 2002, el Lic. Martínez Lloréns presentó ante el Tribunal sus comentarios a la queja según solicitado por este Tribunal el 19 de julio de 2002. Mediante su comparecencia, el abogado querellado admite haberse personado a la oficina del querellante pero negó haberle enviado por fax comunicación alguna al Sr. Novas Dueño. Sostiene el licenciado Martínez Lloréns que conoce al querellante desde el 1997. Que a raíz de un pleito entre ellos en el cual recayó sentencia a favor del Lic. Martínez Lloréns por veintiún mil dólares ($21,000.00), ambos llegaron a un acuerdo de transacción en el cual el Sr. Novas Dueño le pagaría una menor cuantía de dinero en tres plazos. Al conocer el resultado del caso, la Sra. Norma Matta Enríquez y su esposo informaron al licenciado que tenían una sentencia final y firme contra el Sr. Novas Dueño y su esposa. Solicitaron su asistencia para poder cobrarla, fuera llegando a algún tipo de acuerdo transaccional o iniciando un procedimiento de ejecución de sentencia.

El Lic. Martínez Lloréns intentó conseguir un acuerdo de transacción por conducto del abogado del Sr. Novas Dueño, el

Lic. Novas Debién. Inicialmente el licenciado Novas Debién le indicó ser posible resolver el caso de esa forma, que se comunicaría con el Sr. Novas Dueño y le dejaría saber su respuesta en las próximas semanas. Posteriormente, el Lic. Martínez Lloréns llamó por teléfono en múltiples ocasiones al Lic. Novas, pero éste no contestaba, le envió una carta que nunca fue contestada y visitó su oficina cuando se encontraba. Según el abogado querellado, como último esfuerzo para resolver el asunto sin tener que iniciar un procedimiento de ejecución de sentencia y, ante la aparente falta de comunicación entre el abogado Novas Debién y su cliente, el Lic. Martínez Lloréns decidió hacer una breve visita al querellante. Señala el Lic. Martínez Lloréns que visitó su oficina, pero que dicha visita duró pocos minutos porque no se bajó del ascensor. Al abrirse la puerta del ascensor había una reja que impedía el acceso a la oficina del querellante, Sr. Novas Dueño, quien se encontraba en la recepción y le preguntó qué deseaba. El querellado solicitó hablar sobre le caso de la Sra. Matta y su esposo, y alegadamente el querellante le respondió que sí. Según el Licenciado Martínez Lloréns,

> "le informé que se me había hecho imposible comunicarme con su abogado y le pregunté si él estaba al tanto de la posibilidad de resolver el caso mediante un acuerdo transaccional, evitando así el procedimiento de ejecución de sentencia. El señor Novas me mencionó que estaba al tanto, pero que él no iba a pagarle ninguna suma de dinero al matrimonio porque moralmente no les debía nada. También mencionó que la sentencia no sería cobrada, pues la parte demandada en ese caso es Manuel Novas & Asociados y esa entidad ya no existía."

El licenciado querellado sostiene que luego de esa breve conversación cerró la puerta del ascensor y se fue del edificio.

Finalmente el querellado alega que el único propósito de su vista era tratar de resolver el caso <u>Matta Enríquez v. Caparra Town Park</u> de una forma que evitara mayores inconvenientes a ambas partes. Señala que ante la inaccesibilidad del abogado de la parte querellante, estimó que la visita sería beneficiosa para todos, ya que él no estaba cobrando honorarios por la representación de la Sra. Matta y su esposo.

Con el beneficio de la comparencia del licenciado Martínez Lloréns, remitimos el asunto a la consideración del Procurador General, quien nos rindió su informe. Estamos en posición de resolver sin ulteriores procedimientos.

## II.

El Canon 28 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 28, dispone lo siguiente:

> El abogado no debe, **en forma alguna, comunicarse, negociar ni transigir con una parte representada por otro abogado en ausencia de éste.** Particularmente, debe abstenerse de aconsejar o incurrir en conducta que pueda inducir a error a una parte que no esté a su vez representada por abogado. [Énfasis nuestro.]

Una lectura del referido canon claramente demuestra que éste proscribe, entre otras cosas, <u>toda</u> comunicación entre un abogado y una parte adversa que ostenta representación legal. El propósito del Canon 28 es evitar que los abogados de una parte hagan acercamientos inapropiados y antiéticos a personas debidamente representadas para obtener ventaja. También tiene por finalidad prevenir que los abogados induzcan a error a personas que carecen de representación legal. De esa manera se salvaguarda tanto el derecho de los litigantes a obtener representación legal adecuada como el privilegio abogado-

cliente.  In re: Andréu Rivera, res. el 20 de diciembre de 1999, 99 TSPR 188.

Es preciso señalar que la prohibición contenida en el Canon 28, supra, aplica independientemente del nivel de educación de las partes y la intención del abogado que intenta el contacto con la parte. Véase, In re: Soto Cardona, 143 D.P.R. 50 (1997). La jerarquía profesional del abogado comparada con la ausencia de preparación del adversario lego, colocaría al abogado que así actúe en posición ventajosa y se le haría fácil inducir a error al adversario falto de su representación legal. Aún en casos de igualdad de circunstancias entre abogado y parte adversa, de todas formas es conducta impropia el intentar comunicarse con dicha parte adversa en ausencia de su abogado. SARAH TORRES PERALTA, EL DERECHO NOTARIAL PUERTORRIQUEÑO 4.67-68 (1995); según citado en In re: Andréu Rivera, supra.

En el caso de autos, no existe controversia sobre la intervención del licenciado Martínez Lloréns con el demandado para averiguar si recibió la oferta de transacción que se había enviado a su abogado. Tras una lectura de los documentos que obran en autos entendemos que la visita no tenía el propósito de intimidar al señor querellante. No obstante, resulta comprensible que el Sr. Novas Dueño se sintiera intimidado por motivo de tal visita. Dicho malentendido se pudo haber evitado si se hubiese cumplido con el precepto ético contenido en el Canon 28, supra. Añadimos que esta conducta impropia —su visita personal para intentar resolver el caso— no queda justificada por el hecho de no haber podido comunicarse con el abogado del Sr. Novas Dueño, ya que el abogado tenía otros remedios ante los tribunales para procurar el pago de la sentencia a favor de sus clientes.

En síntesis, y a la luz de todo lo antes expuesto, concluimos que el Lcdo. Luis Martínez Lloréns incurrió en una violación al Canon 28 del Código de Ética Profesional, supra. No obstante, al determinar la sanción disciplinaria que se habrá de imponer a un abogado que haya incurrido en conducta impropia, hemos considerado como atenuantes, entre otras cosas, la buena reputación del abogado en la comunidad, si se trata de una primera falta y si ninguna parte ha resultado perjudicada. Véanse en general, In re: Soto Cardona, supra; In re: Méndez Rivera, 141 D.P.R. 753 (1996); In re: Vera Vélez, 136 D.P.R. 284 (1994); In re: Pérez Santiago, 131 D.P.R. 676 (1992).

Por consiguiente, tomando en consideración que la parte no ha resultado perjudicada con sus actuaciones, procede que limitemos la sanción disciplinaria a censurar enérgicamente al licenciado Martínez Lloréns por su actuación. Además, se le apercibe que en el futuro deberá dar fiel cumplimiento a los Cánones de Ética Profesional que rigen la profesión de abogado o, de lo contrario, será objeto de sanciones disciplinarias más severas.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Luis Martínez Lloréns     AB-2002-182          Conducta
                                               Profesional

SENTENCIA

San Juan, Puerto Rico, a 13 de febrero de 2003

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia limitando la sanción a imponer al Lcdo. Luis Martínez Lloréns a una censura; apercibiéndole que deberá dar fiel cumplimiento a los Cánones de Ética Profesional, de lo contrario podría ser objeto de sanciones disciplinarias más severas.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo