

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> José A. Axtmayer Balzac | 2010 TSPR 85 <br><br> 179 DPR ____ |

Número del Caso: CP-2009-4

Fecha: 1 de junio de 2010

Abogado del Querellado:

      Lcdo. José A. Hernández Mayoral

Oficina del Procurador General:

      Lcda. Carmen A. Riera Cintrón
      Procuradora General Auxiliar

      Lcda. Minnie H. Rodríguez López
      Procuradora General Auxiliar

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

CP-2009-0004

José A. Axtmayer Balzac

PER CURIAM

San Juan, Puerto Rico, a 1 de junio de 2010.

El presente recurso nos brinda la oportunidad de examinar la norma pautada en In re: Andréu, Rivera, 149 D.P.R. 820 (1999), y de esclarecer el alcance del Canon 28 del Código de Ética Profesional; específicamente en las instancias en que una comunicación escrita es enviada, simultáneamente, a la parte contraria, a su representación legal y a todos los abogados de los codemandados.[1] Veamos.

I

El 3 de agosto de 2007, el Lcdo. Nelson Biaggi García, miembro del bufete que representa al First Bank of Puerto Rico, en adelante First Bank, en el

---

[1] 4 L.P.R.A. Ap. IX, C. 28.

pleito <u>Constructora de Las Américas, Inc. v. First Bank of Puerto Rico, *et als.*</u>, CC EPE-2005-0704, presentó una queja disciplinaria ante este Tribunal en contra del Lcdo. José A. Axtmayer Balzac,[2] quien representa en el pleito antes mencionado a Constructora de Las Américas, Inc., en adelante Constructora. En su queja, el licenciado Biaggi García alegó que el licenciado Axtmayer Balzac incurrió en conducta profesional impropia al comunicarse por escrito con el Sr. Luis M. Beauchamp, Presidente del codemandado First Bank,[3] y expresarle la intención de Constructora de demandarlo en su carácter personal. A esos efectos, el licenciado Biaggi García indicó que al cursar dicha misiva el licenciado Axtmayer Balzac infringió el Canon 28 del Código de Ética Profesional.

Posteriormente, el 20 de octubre de 2008, emitimos una Resolución mediante la cual le ordenamos a la Procuradora General que formulara la querella correspondiente. Ésta fue presentada el 24 de marzo de 2009.

Luego de presentada la querella y su correspondiente contestación, el 28 de agosto de 2009, emitimos otra Resolución. En ella nombramos como Comisionado Especial al Lcdo. Hiram Sánchez Martínez para que nos rindiera un

---

[2] El licenciado Axtmayer Balzac fue admitido al ejercicio de la abogacía el 11 de diciembre de 1975 y al ejercicio de la notaría el 26 de junio de 1981.

[3] El 28 de septiembre de 2009, el señor Beauchamp cesó sus labores como presidente de First Bank of Puerto Rico.

informe con sus determinaciones de hechos y las recomendaciones que estimara pertinentes.

Así las cosas, el 13 de enero de 2010, el Comisionado Especial rindió su informe. En dicho informe el Comisionado Especial hizo las determinaciones de hechos que ahora exponemos.

El 7 de diciembre de 2005, Constructora presentó una demanda en el Tribunal de Primera Instancia, Sala Superior de Caguas, en contra del First Bank; Desarrolladora Campolago; José Osvaldo Pérez Miranda, su esposa Olga Díaz y la Sociedad Legal de Bienes Gananciales por ellos compuesta; y otros codemandados de nombres desconocidos. En su demanda, Constructora alegó que había pactado con Desarrolladora Campolago la construcción de un proyecto residencial ubicado en el Municipio de Cidra, el cual sería financiado por First Bank, y que los demandados habían incumplido con sus obligaciones contractuales. Por ello, Constructora solicitó como remedio una compensación que excede los $3,000,000 en concepto de cantidades adeudadas y daños y perjuicios.[4]

El 11 y 12 de julio de 2007, y como parte del descubrimiento de prueba, Constructora le tomó una deposición al Sr. Julio Rivera Rodríguez, Jefe del Departamento de Préstamos del First Bank. A raíz de las declaraciones que el señor Rivera Rodríguez hizo en la deposición, el licenciado Axtmayer Balzac ponderó la

---

[4] *Véase*, Informe del Comisionado Especial, págs. 1-2.

posibilidad de que el propio señor Rivera Rodríguez y el señor Beauchamp, en su carácter personal, le fuesen civilmente responsables a Constructora.[5] Esto, pues si lo declarado por el señor Rivera Rodríguez resultaba ser cierto, a juicio del licenciado Axtmayer Balzac, entonces las actuaciones de los señores Rivera Rodríguez y Beauchamp podrían ser *ultra vires* y acarrear consigo la responsabilidad civil de ambos para con Constructora.[6]

Posteriormente, con el propósito de no demorar el descubrimiento de prueba y la toma de la deposición del señor Beauchamp, el licenciado Axtmayer Balzac decidió avisarle al señor Beauchamp de su posible responsabilidad personal para con Constructora y de la conveniencia de estar representado legalmente por un abogado que no fuese quien representara al First Bank. Por ello, decidió cursar la carta que motivó la radicación de la presente querella.[7]

Contando con el beneficio del Informe del Comisionado Especial y luego de examinar el expediente de autos y las distintas posturas de las partes, procedemos a resolver.

II

El Canon 28 del Código de Ética Profesional dispone lo siguiente:

---

[5] Según el licenciado Axtmayer Balzac, la deposición del señor Rivera Rodríguez reveló que sus acciones en torno al financiamiento del proyecto residencial no tenían base documental o reglamentaria sino que eran autorizaciones que recibía directamente del señor Beauchamp. *Véase*, Informe del Comisionado Especial, págs. 3-4.

[6] *Véase*, Informe del Comisionado Especial, págs. 3-4.

[7] *Íd.*

> El abogado no debe, en forma alguna, comunicarse, negociar ni transigir con una parte representada por otro abogado en ausencia de éste. Particularmente, debe abstenerse de aconsejar o incurrir en conducta que pueda inducir a error a una parte que no esté a su vez representada por abogado.[8]

Este Canon regula las comunicaciones que emiten los abogados de una parte hacia la parte contraria. Su propósito es evitar que los abogados obtengan una ventaja indebida mediante acercamientos inapropiados y anti éticos hechos a una parte en ausencia de su representación legal, como también prevenir que los abogados induzcan a error a personas que no están representadas legalmente. De esa manera se salvaguarda el privilegio abogado-cliente y el derecho de los litigantes a obtener una representación legal adecuada.[9]

Es preciso señalar que las prohibiciones contenidas en el Canon 28 del Código de Ética Profesional, *supra*, aplican independientemente del nivel de educación de las partes y de la intención del abogado que emite la comunicación.[10] La

---

[8] 4 L.P.R.A. Ap. IX, C.28.

[9] In re: Andréu, Rivera, 149 D.P.R. 820, 825 (1999). *Véanse además*, In re: Martínez Llorens, 158 D.P.R. 642, 645-646 (2003); In re: Chiques Velázquez, 161 D.P.R. 303, 306 (2004); In re: Guzmán Rodríguez, 167 D.P.R. 310, 314-315 (2006); In re:: Hernández Rosario, 170 D.P.R. 103, 115 (2007); In re: Amundaray Rodríguez, 2007 T.S.P.R. 166, págs. 7-8, res. el 24 de agosto de 2007; In re: Ríos, Meléndez, 2009 T.S.P.R. 100, pág. 5, res. el 29 de abril de 2009.

[10] In re: Andréu, Rivera, 149 D.P.R. 820, 825 (1999); In re: Martínez Lloréns, 158 D.P.R. 642, 646 (2003); In re: Chiques Velázquez, 161 D.P.R. 303, 306 (2004); In re: Guzmán Rodríguez, 167 D.P.R. 310, 315 (2006); In re: Hernández Rosario, 170 D.P.R. 103, 115-116 (2007); In re: Amundaray Rodríguez, 2007 T.S.P.R. 166, pág. 8, res. el 24

jerarquía profesional del abogado comparada con la ausencia de preparación del adversario lego

> ... colocaría al abogado que así actúe en posición ventajosa y se le haría fácil inducir a error al adversario falto de su representación legal. Aún en casos de igualdad de circunstancias entre abogado y parte adversa, de todas formas es conducta impropia el ... comunicarse con dicha parte adversa en ausencia de su abogado.[11]

En específico, el Canon 28 del Código de Ética Profesional, *supra*, proscribe lo siguiente: (1) que el abogado de una parte se comunique, negocie o transija con la otra parte en ausencia de su representación legal; y (2) que incurra en conducta mediante la cual induzca o pueda inducir a error a otra parte que a su vez no ostenta representación legal.[12] Nótese que estas prohibiciones son relativas y no absolutas. Dicho Canon no proscribe, *per se*, toda comunicación con una parte que está representada legalmente. Mas bien, sólo prohíbe las comunicaciones que se dan con dicha parte **en ausencia** de su representación legal.

En cuanto a la primera prohibición establecida por el Canon 28 del Código de Ética Profesional, *supra*, en In re: Andréu, Rivera, *supra*, nos vimos precisados en esclarecer

---

de agosto de 2007; In re: Ríos, Meléndez, 2009 T.S.P.R. 100, págs. 5-6, res. el 29 de abril de 2009.

[11] S. Torres Peralta, El Derecho Notarial Puertorriqueño, Ed. Esp., San Juan, Pubs. STP, 1995, págs. 4.67-4.68.

[12] En cuanto a esta segunda prohibición establecida por el Canon 28 de Ética Profesional, *véanse* In re: Soto Cardona, 143 D.P.R. 50 (1997); In re: Vargas Soto, 146 D.P.R. 55 (1998); In re: Castillo Herrera, 159 D.P.R. 276 (2003).

el alcance de dicho Canon dentro del contexto de un pleito en el cual una de las partes es una corporación. En aquella ocasión optamos por ejercer nuestra jurisdicción disciplinaria sobre unos querellados que, entre otras cosas, enviaron una carta al Presidente de la entidad **sin remitirle copia a la representación legal de dicha corporación.**

Luego de examinar varias Reglas disciplinarias análogas a nuestro Canon 28 indicamos en aquella ocasión que para los efectos de dicho Canon los directores, empleados u oficiales de una corporación pueden ser considerados propiamente como partes de una acción judicial instada en contra de la corporación.[13] Esto, pues a pesar de la personalidad jurídica independiente de dicha entidad ésta actúa por conducto de sus empleados. Añadimos que la determinación de si un empleado, director u oficial corporativo es parte de la acción judicial se hará tomando en cuenta factores como: el cargo que ocupa; su poder para tomar decisiones; su autoridad para vincular a la corporación o para hablar a nombre de ésta; y el asunto sobre el cual versa la comunicación.[14]

Consecuentemente, luego de ponderar los factores antes mencionados, resolvimos que el Presidente de la Junta y sus

---

[13] In re: Andréu, Rivera, 149 D.P.R. 820, 828-830 (1999). Esta norma fue reiterada en In re: Castillo Herrera, 159 D.P.R. 276, 279-280 (2003), y en In re: Amundaray Rodríguez, 2007 T.S.P.R. 166, pág. 8, res. el 24 de agosto de 2007.

[14] In re: Andréu, Rivera, 149 D.P.R. 820, 829 (1999).

miembros constituían propiamente parte en el pleito. Determinamos que ambos querellados incurrieron en conducta impropia y contraria al Canon 28 del Código de Ética Profesional, *supra*, al comunicarse con el Presidente de la Junta y sus miembros, **sin la presencia de su representación legal**, para discutir asuntos inherentemente relacionados a la demanda de intervención instada por la corporación.[15]

Posteriormente, en In re: Martínez Lloréns, 158 D.P.R. 642 (2003), censuramos enérgicamente a un abogado que se comunicó con la parte contraria en aras de llegar a un acuerdo transaccional. Al así hacerlo, indicamos que su conducta impropia "no queda[ba] justificada por el hecho de no haber podido comunicarse con el abogado de [la otra parte], ya que tenía otros remedios ante los tribunales para procurar el pago de la sentencia [emitida] a favor de sus clientes".[16]

Aún más, en In re: Guzmán Rodríguez, 167 D.P.R. 310 (2006), censuramos a un abogado cuya conducta se limitó a intervenir en una reunión en la cual su cliente y la parte contraria, la cual no estuvo asistida por su representación legal, alcanzaron un acuerdo y dicho abogado lo redujo a escrito. A esos efectos, señalamos en aquella ocasión que el querellado no debió intervenir en la reunión sin la presencia del abogado de la parte contraria,

---

[15] In re: Andréu, Rivera, 149 D.P.R. 820, 830-831 (1999).

[16] In re: Martínez Lloréns, 158 D.P.R. 642, 647 (2003); In re: Ríos, Meléndez, 2009 T.S.P.R. 100, págs. 5-6, res. el 29 de abril de 2009.

**"independientemente de las buenas intenciones que pudiera tener de poner fin al pleito en cuestión** ... el Canon 28, *supra*, le prohibía **toda comunicación** con la otra parte en ausencia de su abogado, por lo que los motivos que tuviera para hacerlo no justifican su conducta".[17]

### III

En el caso de marras, el licenciado Axtmayer Balzac le cursó una carta al señor Beauchamp, Presidente del codemandado First Bank, y, simultáneamente, a todos los demás abogados de los codemandados. Por ello, el licenciado García Biaggi, representante legal del First Bank, se quejó ante nos e indicó que el licenciado Axtmayer Balzac había incurrido en conducta impropia y contraria al Canon 28 del Código de Ética Profesional, *supra*. Por su parte, el licenciado Axtmayer Balzac adujo que su conducta no infringió dicho Canon puesto que el señor Beauchamp no era una parte en el pleito y, en la alternativa, su intención al enviar la carta nunca fue obtener ventaja ni inducir a error al señor Beauchamp. No compartimos el criterio del querellado. Veamos.

Como indicamos anteriormente, el Canon 28 del Código de Ética Profesional, *supra*, prohíbe que un abogado se comunique con una parte que está representada legalmente, si es que la comunicación ocurre en ausencia de dicha representación legal. Particularmente, conforme a lo

---

[17] In re: Guzmán Rodríguez, 167 D.P.R. 310, 316-317 (2006). (Énfasis nuestro). *Cf.* In re: Pabón García, 118 D.P.R. 723 (1987).

pautado en In re: Andréu, Rivera, *supra*, esta prohibición es aplicable cuando la parte demandada es una persona jurídica y la comunicación es hecha a uno de sus empleados, oficiales o directores.  Todo dependerá del cargo que ocupa el empleado, oficial o director; su poder para tomar decisiones; su autoridad para vincular a la corporación o para hablar a nombre de ésta; y el asunto sobre el cual versa la comunicación.[18]

Conforme a lo antes mencionado, nos es forzoso concluir que el señor Beauchamp constituye, propiamente, una parte en el pleito Constructora de Las Américas, Inc. v. First Bank of Puerto Rico, *et als.*, CC EPE-2005-0704. Para la fecha en que los hechos ocurrieron, el señor Beauchamp, como Presidente del First Bank, ostentaba el cargo más alto en la jerarquía administrativa.  Por ello, después de la Junta de Directores, es quien posee el mayor poder para tomar decisiones a nombre de la entidad, para vincularla a dichas decisiones y para hablar a su nombre. En este sentido, la normativa pautada en In re: Andréu, Rivera, *supra*, es perfectamente aplicable al caso de autos.

Además, las alegadas intenciones del licenciado Axtmayer Balzac al cursar su comunicación escrita no varían nuestra determinación.  Ya hemos indicado que el Canon 28 del Código de Ética Profesional, *supra*, aplica "independientemente de las buenas intenciones que [pueda] tener [el abogado, puesto que dicho Canon] le prohíb[e]

---

[18] In re: Andréu, Rivera, 149 D.P.R. 820, 829 (1999).

toda comunicación con la otra parte" en ausencia de su representación legal.[19]

No obstante, lo anterior no dispone completamente del asunto ante nuestra consideración. A diferencia de lo ocurrido en In re: Andréu, Rivera, *supra*, en el caso de autos el licenciado Axtmayer Balzac cursó la carta objeto de esta acción disciplinaria al señor Beauchamp **y, simultáneamente, a todos los abogados de los codemandados.**[20] Esta diferencia nos obliga a analizar si dicha notificación simultánea se atempera a los preceptos del Canon 28 del Código de Ética Profesional, *supra*.

Las prohibiciones establecidas por el referido Canon, como bien nos indica el Comisionado Especial, son fáciles de implementar cuando la comunicación a analizar es una oral; bien sea transmitida personalmente, por teléfono, por circuito cerrado o mediante cualquier otro medio mecánico o electrónico de comunicación oral. Nótese que en estas instancias es suficiente con que el abogado de la parte receptora de la comunicación "esté presente" en la conversación y que pueda participar en la misma para proteger y asesorar adecuadamente a su cliente. Lo relevante es que el método de comunicación oral que sea utilizado permita la transmisión simultánea de las voces de

---

[19] In re: Guzmán Rodríguez, 167 D.P.R. 310, 316-317 (2006); In re: Ríos, Meléndez, 2009 T.S.P.R. 100, págs. 5-6, res. el 29 de abril de 2009. *Cf.* In re: Pabón García, 118 D.P.R. 723 (1987).

[20] Surge del expediente que todos los abogados involucrados en el caso tienen sus oficinas en el mismo edificio.

los interlocutores, incluyendo la de todos los abogados participantes en la conversación de manera que puedan adoptar eficazmente las medidas que estimen pertinentes para proteger los intereses específicos de sus clientes.[21] En otras palabras, lo determinante es que el método de comunicación oral escogido permita la intercomunicación instantánea entre las partes.[22]

Ahora bien, cuando la comunicación en controversia es emitida por escrito el análisis bajo el Canon 28 del Código de Ética Profesional, *supra*, resulta distinto. Como norma general, cuando la comunicación es emitida por escrito su recibo por la parte contraria no ocurre ante la "presencia física" de su representación legal. Por ello, bajo la impresión de actuar conforme a los preceptos del referido Canon, la práctica común ha sido enviar la comunicación escrita a la parte contraria y, simultáneamente, copia a su abogado.[23]

---

[21] *Véase*, Informe del Comisionado Especial, pág. 13.

[22] *Íd.*, págs. 13-14.

[23] Existen argumentos a favor y en contra de una norma que le permita a un abogado enviarle a la parte contraria una comunicación escrita sobre algún aspecto del pleito, si notifica simultáneamente copia de dicha comunicación al abogado de la parte receptora. A favor, podría argumentarse que puede haber ocasiones en las que un abogado tiene suficientes motivos para creer que las ofertas de transacción que le ha realizado a la parte contraria, a través de su representación legal, no han llegado a conocimiento de dicha parte. Así, para asegurarse que la parte contraria adviene en conocimiento de las ofertas ya realizadas, y de las que están por realizarse, si alguna, el abogado podría estar interesado en enviarle las ofertas directamente a la parte contraria.

A nuestro juicio, toda comunicación, sea oral o escrita, entre un abogado y una parte que esté representada legalmente siempre debe hacerse **en presencia** de su representación legal. **En específico, cuando un abogado desea comunicarse por escrito con la parte contraria, dicha comunicación siempre debe hacerse, en primera instancia, "por conducto" de la representación legal de la parte contraria.** Esto, pues la propia naturaleza de la comunicación escrita imposibilita, en la gran mayoría de las ocasiones, que el abogado de la parte contraria esté presente cuando su cliente recibe la comunicación. Permitir lo contrario, aunque la comunicación escrita sea notificada simultáneamente a la representación legal de la parte contraria, acarrea el riesgo de que la copia dirigida al abogado no sea recibida o que sea recibida con demora perjudicial a la relación abogado-cliente que el Canon 28 del Código de Ética Profesional, *supra*, pretende salvaguardar. Además, una carta que resultare amenazante que le llegue al abogado con demora podría surtir un efecto nocivo en su cliente, pues lo podría inducir a actuar

_____

De igual forma, en contra de lo anterior, podría argumentarse que el riesgo de que la parte contraria no reciba la comunicación escrita siempre está presente en un sistema adversativo de litigación. Este sistema le reconoce un amplio margen a la discreción profesional de los abogados. Por ello, enuncia este argumento, que la falta de un abogado, consistente en no informar a su cliente sobre los asuntos del caso, debe ser atendida de otro modo y no circunvalando el conocimiento de la comunicación escrita que debe tener la representación legal de la parte receptora de dicha comunicación. *Véase*, Informe del Comisionado Especial, págs. 14-15.

contrario a su mejor interés legal o podría suscitar resultados imprevistos.[24]

**Asimismo, estimamos que el envío de la comunicación escrita a la parte contraria y, simultáneamente, a su representación legal debe hacerse sólo ante la presencia de circunstancias apremiantes y en última instancia. Por ello, un abogado sólo debe recurrir al método de envío simultáneo cuando sus intentos de enviar la comunicación escrita por conducto del abogado de la parte contraria han sido infructuosos y luego de haberle avisado a dicha representación legal que utilizará el método de envío simultáneo. Esto, siempre y cuando el aviso en cuestión contenga copia de la comunicación escrita.** De esta forma se eliminan los riesgos antes descritos y se evitan los efectos nocivos causados por una demora en la entrega de la comunicación escrita. Ahora bien, en las instancias en que se haya cumplido con lo anterior y se recurra al método de envío simultáneo es preferible que, en lo posible, se entregue la comunicación a la mano cuando la parte contraria y su abogado se encuentran en el mismo lugar.

En resumen, el Canon 28 del Código de Ética Profesional, *supra*, no proscribe todas las comunicaciones que un abogado sostenga con una parte que esté a su vez representada legalmente. Sólo prohíbe las comunicaciones que ocurran con dicha parte **en ausencia** de su representación legal. Consecuentemente, cuando un abogado

---

[24] *Véase*, Informe del Comisionado Especial, págs. 15-16.

opte por comunicarse por escrito con la parte contraria deberá proceder conforme a la norma aquí esbozada.

**En primera instancia, el abogado deberá remitir la comunicación escrita por conducto de la representación legal de la parte contraria. Cuando este método de envío resulte infructuoso y concurran circunstancias apremiantes, el abogado deberá apercibirle a la representación legal de la parte contraria que desea enviar la comunicación escrita directamente a dicha parte. En este aviso se le deberá adelantar copia de la comunicación escrita al abogado de la parte contraria.**

**Luego de realizar el aviso antes descrito, el abogado podrá enviar la comunicación escrita simultáneamente a la parte contraria y a su representación legal. Es preferible que dicha comunicación escrita se entregue a la mano simultáneamente, si es que la parte contraria y su representación legal se encuentran en el mismo lugar. De lo contrario, el abogado podrá enviarla por correo certificado con acuse de recibo simultáneamente a la parte contraria y a su representación legal.[25]**

IV

En el caso de autos no surge del expediente que el licenciado Axtmayer Balzac le haya enviado la comunicación escrita al señor Beauchamp, primeramente, por conducto de su abogado, ni que dichos intentos de comunicación con la

---

[25] La norma aquí esbozada no se circunscribe a partes contrarias, sino se extiende a todas las partes dentro de un pleito.

parte contraria hayan sido infructuosos. Tampoco surge del expediente que hubiesen circunstancias apremiantes que justificaran el envío simultaneo de la carta al señor Beauchamp y a su representación legal.[26] Por ello, al haber utilizado el método de envío simultáneo **en primera instancia**, el licenciado Axtmayer Balzac violó el Canon 28 del Código de Ética Profesional, *supra*.

Sin embargo, en esta ocasión hemos de limitar nuestra facultad disciplinaria a una amonestación.[27] El licenciado Axtmayer Balzac goza de buena reputación entre los miembros de la profesión togada. Ha mantenido un historial profesional limpio durante los treinta y cinco (35) años que lleva ejerciendo la profesión de abogacía y, anteriormente, no había sido objeto de procedimiento disciplinario alguno.

Además, tanto el querellado como el Comisionado Especial y la Procuradora General, están de acuerdo en que ninguna parte en el pleito quedó perjudicada por el envío simultáneo de la comunicación escrita objeto de este procedimiento disciplinario. Dicha comunicación tampoco

---

[26] De haber concurrido circunstancias apremiantes, el licenciado Axtmayer Balzac hubiese tenido que enviar el aviso previo antes descrito, como paso anterior a incurrir en el método de envío simultaneo.

[27] Al imponer sanciones disciplinarias hemos de considerar, entre otras cosas, el historial profesional del querellado, si ha sido objeto de acción disciplinaria anterior, si goza de buena reputación entre los miembros de la profesión legal, si su conducta impropia causó perjuicio a otra parte. In re: Soto Cardona, 143 D.P.R. 50 (1997).

tuvo "el propósito de intimidar al señor Beauchamp, "ni fue redactada en lenguaje amenazante".[28]

V

Por los fundamentos antes expuestos, amonestamos al Lcdo. José A. Axtmayer Balzac por haber infringido el Canon 28 del Código de Ética Profesional. Le apercibimos que de incurrir nuevamente en conducta contraria a los Cánones de Ética podrá ser sancionado de forma más severa.

---

[28] *Véase*, Informe del Comisionado Especial, pág. 17.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

CP-2009-0004

José A. Axtmayer Balzac

SENTENCIA

San Juan, Puerto Rico, a 1 de junio de 2010.

Por los fundamentos antes expuestos en la Per Curiam que antecede, la cual se hace formar parte integra de la presente, amonestamos al Lcdo. José A. Axtmayer Balzac por haber infringido el Canon 28 del Código de Ética Profesional. Le apercibimos que de incurrir nuevamente en conducta contraria a los Cánones de Ética podrá ser sancionado de forma más severa.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton no interviene. La Jueza Asociada señora Rodríguez Rodríguez inhibida. El Juez Asociado señor Kolthoff Caraballo no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo