PER curiam:
I
El Ledo. Antonio Ríos Acosta fue admitido al ejercicio de la abogacía y del notariado el 28 de mayo de 1976 y el 17 de junio de 1976, respectivamente. El Ledo. José Meléndez Figueroa fue admitido al ejercicio de la abogacía el 28 de mayo de 1976 y al ejercicio del notariado el 19 de diciembre de 1976.
*925 El 12 de noviembre de 2003, el Juez del Tribunal de Primera Instancia, Sala Superior de Fajardo, Hon. Edison Sanabria Pérez, refirió ante nos varias mociones presenta-das en su sala y suscritas por los aquí querellados. El re-ferido expuso la posible violación a los Cánones del Código de Etica Profesional.
El 8 de marzo de 1988, el señor Ayala Rodríguez otorgó testamento abierto ante el licenciado Meléndez Figueroa. El testador excluyó de participación en los tercios de me-jora y libre disposición a Ana Ayala Jiménez, su hija. De acuerdo con el testamento, en los tercios de mejora y libre disposición sólo tenían participación los otros hijos del testador.
En 1996, una de las hijas del testador, Marta Ayala, inició un proceso judicial ex parte para nombrarle un tutor al testador. El licenciado Meléndez Figueroa asumió la re-presentación legal de la Sra. María Ayala, quien fue nom-brada tutora del testador. El 17 de septiembre de 1999, la Sra. María Ayala renunció a la tutela del testador. El foro primario emitió una resolución en la cual nombró como tutora a la Sra. Angélica Ayala, quien aceptó el cargo el 22 de febrero de 2000.
El 10 de enero de 2003, el señor Ayala Rodríguez falleció. El 4 de febrero de 2003, en contestación a una carta enviada por el licenciado Ríos Acosta, el licenciado Meléndez Figueroa le solicitó una reunión para “discutir la adjudicación a los herederos del correspondiente caudal relicto”. El 27 de agosto de 2003, el licenciado Ríos Acosta presentó ante el foro primario dos de las mociones que dan lugar a los señalamientos ante nos.
En la primera moción se le informó al tribunal que todos los hijos (herederos) del señor Ayala Rodríguez habían exa-minado el informe final de tutela presentado por la Sra. Angélica Ayala y lo aprobaron. Además, se solicitó que se diera por terminada la tutela del fenecido y que se orde-nara el retiro de los fondos consignados a su favor. Esta *926 moción se presentó con el epígrafe del caso ex parte de tu-tela, en donde el licenciado Meléndez Figueroa es abogado de la Sra. María Ayala. Dicha moción se acompañó con de-claraciones juradas de todos los hijos del causante, incluso de la Sra. María Ayala.
En la segunda moción y bajo el mismo epígrafe se soli-citó la cancelación de una vista pautada para el 11 de sep-tiembre de 2003. La solicitud concluyó que era innecesaria la vista para aprobar el informe final de la tutora e hija del causante, Angélica Ayala, pues “los herederos testamenta-rios” aceptaron el informe final de tutela. En esta moción se solicitó al tribunal que diera por terminada la tutela del pupilo Ayala Rodríguez. Además, se hizo constar la existen-cia del testamento y se exigió “el retiro de los fondos con-signados ... a favor de los herederos testamentarios”.
Es importante destacar que ambas mociones fueron no-tificadas al licenciado Meléndez Figueroa, quien represen-taba a una heredera y había autorizado el testamento. El 4 de septiembre de 2003, el licenciado Meléndez Figueroa presentó una moción en representación de María Ayala y otro de los herederos. En la misma se solicitó que no se cancelara la Vista de 11 de septiembre de 2003, pues el licenciado Ríos Acosta se había reunido con su cliente sin su presencia. En la moción se expone que el licenciado Ríos Acosta les informó a los herederos que las cláusulas testa-mentarias eran ineficaces. Se indicó, además, que los com-parecientes no aprobaban el informe final de tutela, el re-tiro de fondos ni la división de comunidad hereditaria. Junto con esta moción se enviaron declaraciones juradas de María Ayala y del otro heredero.
En la Vista de 11 de septiembre de 2003, las partes acor-daron los términos para resolver sus diferencias en cuanto a la distribución del caudal hereditario. En ese acuerdo las partes consintieron aplicar las cláusulas testamentarias a favor de dos de los herederos (los representados por el li-cenciado Meléndez Figueroa) y distribuir en partes iguales *927 el remanente. Esto se hizo para no afectar a la heredera a quien por testamento sólo se le había dado participación en la legítima estricta.
Estas circunstancias motivaron al juez de primera ins-tancia a referir el asunto ante nos. En cumplimiento de una orden de este Tribunal, el Procurador General pre-sentó una querella disciplinaria contra ambos abogados. El 10 de octubre de 2008, el Comisionado Especial nombrado rindió su informe y recomendó encontrar al licenciado Ríos Acosta incurso en violación al Canon 28 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, y al licenciado Melén-dez Figueroa incurso en violación al Canon 21 del Código de Ética Profesional, supra. Debidamente sometido el caso a nuestra consideración, procedemos a resolver.
II
Las normas establecidas en el Código de Ética Profesional tienen como fin asegurar que las personas en nuestra jurisdicción reciban servicios legales de forma responsable, capaz y honesta. Un letrado no debe olvidar la norma básica “que establece que ‘[e]l ejercicio de la práctica de la profesión de abogado requiere en todo momento celo, cuidado y prudencia’ ”. (Énfasis suprimido.) In re Filardi Guzmán, 144 D.P.R. 710, 716 (1998). Es norma trillada que los cánones de ética profesional prescriben “las normas mínimas de conducta que rigen a nuestra judicatura y sirven de base para guiar el comportamiento de sus miembros”. In re Claverol Siaca, 175 D.P.R. 177 (2009).
El Canon 28 del Código de Ética Profesional, supra, en lo pertinente dispone:
El abogado no debe, en forma alguna, comunicarse, negociar ni transigir con una parte representada por otro abogado en ausencia de éste.
La referida norma “claramente proscribe, entre otras co- *928 sas, toda comunicación, entre un abogado y una parte ad-versa que ostenta representación legal”. (Enfasis suprimido.) In re Guzmán Rodríguez, 167 D.P.R. 310, 314 (2006). Este canon persigue evitar todo acercamiento im-propio para obtener ventajas desleales. Esta prohibición aplica independientemente del nivel de educación de las partes y de la intención del abogado que realiza el acerca-miento antiético. In re Martínez Lloréns, 158 D.P.R. 642 (2003).
La norma es evidente. Se prohíbe la comunicación entre un abogado y otra parte en ausencia de su abogado. In re Andréu, Rivera, 149 D.P.R. 820 (1999). El canon en su primera prohibición presupone la existencia de otra parte representada por un abogado. En estos casos, la exigencia ética es clara. El abogado está impedido de comunicarse con la parte sin la presencia de su abogado.
III
Con el beneficio de las normas antes descritas, pasamos a evaluar los hechos que motivan la presente querella.
Las normas éticas de la profesión impiden la comunica-ción de un abogado con una parte que ha contratado una representación legal sin la presencia de éste.
En el caso ex parte de tutela, el licenciado Figueroa Me-léndez era abogado de una de las partes y continuó sién-dolo hasta su fin. Este hecho era conocido por el licenciado Ríos Acosta. El 4 de febrero de 2003, ante la muerte del testador, el licenciado Figueroa Meléndez se comunicó con el licenciado Ríos Acosta y le expresó que tenían que re-unirse para discutir la división del caudal relicto. Surge de las dos mociones que presentó el querellado Ríos Acosta —en las que informaba el acuerdo de los herederos— que el licenciado Meléndez Figueroa era abogado en el caso. En ambas mociones consta la certificación de envío al licen-ciado Meléndez Figueroa.
*929 Una vez establecido que el licenciado era abogado de una de las partes en el proceso judicial y que este hecho le constaba al querellado Ríos Acosta, pasamos a analizar si se cometió la violación ética imputada.
Las mociones que presentó el licenciado Ríos Acosta para informar del acuerdo al que habían llegado los here-deros incluían la firma bajo juramento de la Sra. María Ayala, quien para entonces era representada por el licen-ciado Meléndez Figueroa. Estas mociones fueron las que motivaron el señalamiento hecho por el licenciado Melén-dez Figueroa. Según las determinaciones de hecho del Co-misionado Especial, el acuerdo se realizó sin la presencia del licenciado Meléndez Figueroa.
Precisamente, lo que ocurrió después de la reunión es lo que el Canon 28 del Código de Ética Profesional, supra, pretende evitar. Posteriormente, uno de los herederos que no era representado por el licenciado Ríos Acosta y la dienta del licenciado Meléndez Figueroa alegaron que el querellado Ríos Acosta les orientó sobre la nulidad del tes-tamento y que ellos no aprobaron los acuerdos aludidos en las mociones. El licenciado Ríos Acosta estaba obligado a cumplir con la conducta establecida por el Canon 28 del Código de Ética Profesional, supra, y no lo hizo. Proceder de otra forma hubiera evitado esta querella.
La norma ética prohibía al licenciado Ríos Acosta inter-venir, negociar, aconsejar o, en forma alguna, comunicarse con la Sra. María Ayala en ausencia del licenciado Melén-dez Figueroa. Nos resulta clara la violación al Canon 28 del Código de Ética Profesional, supra. Aunque el procedi-miento de tutela era de naturaleza ex parte, esto no hace inaplicable la clara prohibición. La realidad fáctica de este caso hace de la conducta proscrita una mayor lesión a la norma ética. Los herederos tenían puntos de vista encon-trados y uno de éstos había contratado los servicios legales de otro abogado. En la reunión se discutió el informe final de tutela, cuestión para la cual fue contratado el licenciado
*930 Meléndez Figueroa. Además, en la reunión se discutieron cuestiones sobre bienes de la herencia y retiro de fondos consignados en el tribunal (asunto tratado en el caso de tutela). Todas estas materias eran de la incumbencia pro-fesional del licenciado Meléndez Figueroa y esto le cons-taba al querellado. El acuerdo que produjo dicha reunión culminó en la solicitud de suspensión de vista y en el retiro de fondos consignados, asunto para el cual era indispensable la presencia de todos los abogados.
La alegada imprudencia del licenciado Meléndez Figueroa al no renunciar a la representación legal de su cliente no exime de responsabilidad al querellado por la conducta mostrada.
El proceder más correcto y loable para no incumplir con las nomas éticas es ser sumamente estricto en el cuestio-namiento de nuestro propio comportamiento.
Para fijar la sanción disciplinaria que procede contra un abogado que ha incumplido con las normas éticas hay que atender los factores siguientes: su previo historial; si se trata de su primera falta; si el abogado goza de buena reputación; la aceptación de la falta y su sincero arrepentimiento; si la acción fue motivada por ánimo de lucro, y cualquier otro factor pertinente a los hechos. In re Díaz Ortiz, 150 D.P.R. 418 (2000); In re Arroyo Rivera, 148 D.P.R. 354 (1999).
El querellado Meléndez Figueroa se encuentra suspen-dido indefinidamente del ejercicio de la abogacía y notaría por conducta deshonesta en violación a las normas éticas de la profesión. In re Meléndez Figueroa, 166 D.P.R. 199 (2005). La evaluación de su conducta bajo la lupa de los cánones de ética profesional será examinada en el caso de que el querellado Meléndez Figueroa solicite la reinstala-ción a la profesión.
Por su parte, el querellado Ríos Acosta estuvo sujeto a sanciones disciplinarias en el pasado. Anteriormente, le sancionamos con dos suspensiones del ejercicio de la abo- *931 gacía por exhibir conducta reñida con los cánones de ética profesional. In re Ríos Acosta I, 143 D.P.R. 128 (1997); In re Ríos Acosta I, 139 D.P.R. 117 (1995). El querellado no ha mostrado indicio de arrepentimiento o aceptación por las violaciones imputadas.
IV
Por los fundamentos antes expuestos, y debidamente evaluados los criterios anteriores, suspendemos al licen-ciado Ríos Acosta del ejercicio de la abogacía por el término de seis meses y conforme con lo dispuesto aquí. Le aperci-bimos que de repetirse en un futuro la conducta que dio lugar a esta querella seremos mucho más severos en nues-tra sanción. Se ordena, además, la incautación inmediata de su obra notarial.
El querellado tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar con su represen-tación y les devolverá los expedientes de los casos pendien-tes, así como los honorarios recibidos por trabajos no rendidos. Además, tiene el deber de informar oportuna-mente de su suspensión a los foros judiciales y administrativos. Estas gestiones deberán ser certificadas a este Tribunal dentro del término de treinta días a partir de la notificación de esta opinión per curiam y Sentencia.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concu-rrió con el resultado sin opinión escrita.