per curiam:
El 22 de febrero de 2005, el Sr. Eduardo Ro-dríguez Domínguez presentó una queja juramentada contra el Ledo. Damián F. Planas Merced. Expuso, en esencia, que el abogado se había comunicado con él con relación *181 a un caso sobre cobro de dinero presentado por una corpo-ración de la cual él era accionista, a pesar de que represen-taba a la persona demandada.
Adujo que era accionista de la corporación Comfort Planners, Inc. junto con el Sr. Pedro González Larriuz, y que, aunque la corporación se encuentra inactiva en cuanto a sus operaciones, subsiste con el propósito de pa-gar y cobrar deudas pendientes. Esa función administra-tiva correspondía al señor González Larriuz, quien con-trató al Ledo. Luis Sevillano Sánchez para presentar una demanda en cobro de dinero contra el Sr. Alfredo Dome-nech Guerrero, la que fue identificada como Comfort Planners, Inc. v. Alfredo Domenech, Civil Núm. CD-2004-539.
Expuso el señor Rodríguez Domínguez que, en o alrede-dor de 21 de octubre de 2004, se comunicó a su teléfono celular una persona que se identificó como el Ledo. Damián Planas Merced, quien alegadamente representaba al señor Domenech Guerrero en la demanda sobre cobro de dinero presentada contra éste por Comfort Planners, Inc. Durante esa comunicación, el licenciado Planas Merced le informó que el 27 de octubre de 2004 se estaría celebrando una vista en el Tribunal de Primera Instancia, Sala de Manatí, con relación a la reclamación de Comfort Planners contra su cliente. Según el señor Rodríguez Domínguez, el licen-ciado Planas Merced le insinuó que el señor González La-rriuz y el licenciado Sevillano Sánchez le estaban ocul-tando los procedimientos que se llevaban a cabo debido a ciertas agendas escondidas.
El 27 de octubre de 2004, el señor Rodríguez Domínguez acudió al Tribunal de Primera Instancia, Sala de Manatí, y allí se le acercó una persona que se identificó como el licen-ciado Planas Merced, con quien había hablado por teléfono irnos días antes. La conversación con el licenciado Planas Merced fue interrumpida por la llegada del licenciado Se-villano Sánchez, a quien el señor Rodríguez Domínguez *182 informó que su presencia en el Tribunal obedecía a que el licenciado Planas Merced se había comunicado con él.
En su queja, el señor Rodríguez Domínguez indicó que el licenciado Planas Merced trató de permanecer a su lado, mientras el licenciado Sevilla Sánchez intentaba dialogar con él. Llamado el caso, el licenciado Sevillano Sánchez le informó a la jueza que presidió los procedimientos lo ocu-rrido con el licenciado Planas Merced y ésta le indicó al abogado que esa conducta no era aceptable y que cualquier comunicación tenía que hacerse a través del abogado de la corporación. Tras lo sucedido, el señor Rodríguez Domín-guez entendió que el propósito de la comunicación directa del licenciado Planas Merced era suscitar en él dudas sobre las actuaciones del licenciado Sevillano Sánchez y el señor González Larriuz, para beneficio de su cliente.
El licenciado Planas Merced presentó su “Contestación a la Queja” el 7 de septiembre de 2005. Referimos el asunto a la Oficina del Procurador General y éste presentó su in-forme el 14 de marzo de 2007.
Indicó el Procurador que el licenciado Planas Merced admitió, en su contestación a la queja, que sostuvo una conversación con el señor Rodríguez Domínguez, pero negó haber infringido el Canon 28 del Código de Etica Profesio-nal, 4 L.P.R.A. Ap. IX, aduciendo que el señor Rodríguez Domínguez no era “parte contraria”, porque la corporación Comfort Planners había sido disuelta de facto. Además, el licenciado Planas Merced expuso que el único propósito de su comunicación con el señor Rodríguez Domínguez fue “auscultar la posibilidad de incluir al quejoso como parte en el pleito y garantizarle su día en corte”.
No obstante, el Procurador General concluyó que, según los criterios expuestos en In re Andréu, Rivera, 149 D.P.R. 820 (1999), el señor Rodríguez Domínguez debe ser consi-derado y es parte en la demanda sobre cobro de dinero instada por Comfort Planers, por lo cual el licenciado Pla-nas Merced estaba impedido de comunicarse con él de *183 forma ex parte. Adujo el Procurador que en el caso seña-lado se resolvió que los directores, empleados u oficiales de una entidad corporativa deben ser considerados partes en una acción judicial por o contra ésta. Añadió que en ese caso se expuso que:
La determinación de si un empleado, director u oficial cor-porativo es parte de la acción judicial se ha hecho tomando en cuenta factores como: el cargo que ocupa, su poder para tomar decisiones, su autoridad para vincular a la corporación o para hablar en nombre de ésta. También ... el asunto sobre el cual versa la comunicación, es decir, si está inherentemente rela-cionado con la controversia judicial. íd., pág. 829.
Por lo expuesto, el Procurador General determinó que existía la posibilidad de que la conducta del licenciado Pla-nas Merced hubiera infringido el Canon 28 del Código de Etica Profesional, supra.
Tras solicitar varias prórrogas, el licenciado Planas Merced presentó su Réplica al Informe del Procurador General y Posición del Querellado, el 11 de septiembre de 2007. En su escrito, sostuvo que el señor Rodríguez Domín-guez no es la “parte contraria” que dispone el citado Canon 28, porque la corporación Comfort Planners había sido disuelta. Insistió en lo que ya había expuesto ante el Pro-curador General, en el sentido de que la queja fue un es-fuerzo del licenciado Sevillano Sánchez para desquitarse por una solicitud de descalificación que el licenciado Pla-nas Merced había presentado contra él.
El licenciado Planas Merced argüyó que el certificado de incorporación de Comfort Planners fue cancelado por el Departamento de Estado el 2 de noviembre de 1998, por no haberse presentado los informes anuales de 1995 a 1997 y que, en conformidad con el Artículo 9.08 de la Ley General de Corporaciones, 14 L.P.R.A. see. 3008, su personalidad jurídica cesó el 2 de noviembre de 2001; o sea, tres años después de la fecha de la cancelación de su certificado de incorporación. Concluyó que, habiendo cesado la persona-lidad jurídica de Comfort Planners, él no se comunicó con *184 un oficial de esa corporación, sino que se comunicó perso-nalmente con el señor Rodríguez Domínguez, quien no te-nía conocimiento de la demanda sobre cobro de dinero ins-tada contra el señor Domenech Guerrero y no era parte demandante, sino un socio de la extinta corporación. Por todo ello, entendía que no existía “prueba clara, robusta y convincente” de que había incurrido en violación al Canon 28.
Mediante Resolución de 30 de noviembre de 2007 orde-namos al Procurador General presentar la querella contra el licenciado Planas Merced por violación al Canon 28 de Ética Profesional. Es así como el 23 de enero de 2008 el Procurador General presentó la querella en la que formuló el cargo siguiente:

Cargo I

Al comunicarse de manera ex parte con el señor Eduardo Rodríguez Domínguez el Ledo. Damián F. Planas Merced in-fringió el Canon 28 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, el cual dispone que [el] abogado no debe, en forma alguna, comunicarse, negociar, ni transigir con una parte re-presentada por otro abogado en ausencia de éste. Particular-mente, debe abstenerse de aconsejar o incurrir en conducta que pueda inducir a error a una parte que no está represen-tada por abogado. (Énfasis suprimido.) Querella, pág. 3.
El licenciado Planas Merced presentó su “Contestación a la Querella” el 14 de marzo de 2008, reiterando esencial-mente los argumentos contenidos en la contestación a la queja y en su réplica al Informe del Procurador General. Designamos a la Leda. Ygrí Rivera de Martínez como comi-sionada especial para recibir la prueba y rendir un informe con determinaciones de hechos y las recomendaciones pertinentes.
Señalada la vista, el licenciado Planas Merced solicitó la desestimación de la querella, el 5 de septiembre de 2008. Apoyó su solicitud en que el Tribunal de Primera Instancia había desestimado la demanda, con perjuicio, en el caso Comfort Planners, Inc. v. Alfredo Domenech Guerrero *185 h/n/c Aireare Technology, CD2004-0539, al concluir que Comfort Planners había cesado de existir desde el 2 de noviembre de 2001, en conformidad con el Artículo 9.08 de la Ley General de Corporaciones de 1995, supra, por lo cual no tenía legitimación activa. Expuso el licenciado Pla-nas Merced que Comfort Planners no había impugnado la sentencia ante el Tribunal de Apelaciones. Alegó, entonces, que, al no existir la corporación Comfort Planners, el señor Rodríguez Domínguez no era accionista de ésta al presen-tarse la demanda, y en consecuencia nunca fue represen-tado por el licenciado Sevillano Sánchez. Por eso, la comu-nicación que sostuvieron el licenciado Planas Merced y el señor Rodríguez Domínguez no fue una conversación ex parte con una parte contraria y no infringió el Canon 28 de Etica Profesional.
El 9 de septiembre de 2008 las partes presentaron el Informe de Conferencia con Antelación a Vista Disciplinaria. En éste se estipuló que, según la sentencia emitida el 9 de julio de 2008 en el caso mencionado, Comfort Planners cesó de existir jurídicamente el 2 de no-viembre de 2001. El querellado reiteró su petición de des-estimación de la querella porque en esas circunstancias su conversación con el señor Rodríguez Domínguez no podía ser considerada como una comunicación ex parte.
Posteriormente, el 23 de septiembre de 2008, el Ledo. Jorge L. Santiago Carrasquillo, representante legal del querellado, solicitó autorización para renunciar a la repre-sentación legal, por haber surgido diferencias irreconcilia-bles con su cliente. En su solicitud, expresó que, contrario a lo expuesto en la moción de desestimación de la querella, la sentencia dictada por el Tribunal de Primera Instancia en el caso Comfort Planners, Inc. v. Alfredo Domenech Guerrero, CD-2004-0539, no había advenido final y firme. In-formó que, después de presentar esa moción, recibió varios documentos que evidenciaban que el 13 de agosto de 2008 se había presentado una apelación ante el Tribunal de Ape- *186 ¡aciones en el mencionado caso, identificada con el número KLAN200801282. Explicó que recibió esa documentación el día antes de presentar su renuncia a la representación legal aunque su representado, el licenciado Planas Merced, fue notificado de ello el 22 de agosto de 2008, antes de presentarse la moción de desestimación.(1)
La Leda. Myrna E. López Colón asumió la representa-ción del querellado. Tras varios trámites y reuniones, las partes presentaron un informe de conferencia enmendado, el 24 de marzo de 2009. Éste no incluyó estipulación al-guna respecto a lo resuelto por el Tribunal de Primera Instancia. En vez, las partes estipularon que: (1) el Ledo. Luis Sánchez Sevillano presentó una demanda sobre cobro de dinero en representación de Comfort Planners, Inc., el 18 de junio de 2004 y (2) antes de la llamada telefónica del querellado, el señor Rodríguez Domínguez tenía un total desconocimiento del estado de los procedimientos que se estaban llevando a cabo contra el señor Domenech Guerrero en el caso de cobro de dinero.
A la vista final comparecieron el Procurador General, representado por la procuradora general auxiliar, Leda. Edna E. Rodríguez Benitez, y el querellado, representado por la Leda. Myrna E. López Colón. La Procuradora General Auxiliar sometió su caso a base del expediente de la queja AB-2005-45, que contiene la querella y los incidentes originales.
Por su parte, el querellado expuso, una vez más, que el señor Rodríguez Domínguez no tenía nada que ver con Comfort Planners desde el 2002. Argüyó que no existía en este procedimiento la prueba clara, robusta y convincente requerida. Ambas partes solicitaron término para presen- *187 tar memoriales de derecho. Una vez recibidos, la Comisio-nada Especial sometió su informe, en el cual encontró pro-bados los hechos siguientes:
1. El Ledo. Damián F. Planas Merced fue admitido a la práctica de la abogacía el 30 de junio de 1995 y de la notaría el 17 de agosto de 1995.
2. Comfort Planners, Inc. es mía corporación con fines de lucro organizada el 13 de febrero de 1968 bajo las leyes de Puerto Rico. Sus accionistas son el Sr. Eduardo Rodríguez Do-mínguez y el Sr. Pedro González Larriuz. El 2 de septiembre de 1998, el Departamento de Estado notificó a Comfort Planners su incumplimiento con la presentación de los informes anuales correspondientes a los años 1995 al 1997, y su inten-ción de cancelación por tal actuación. El 2 de noviembre de 1998, el certificado de incorporación de Comfort Planners fue cancelado por no haber cumplido con los requisitos exigidos por el Artículo. 15.02 de la Ley 144 de 10 de agosto de 1995 [14 L.P.R.A. see. 3272], según enmendada.
3. Desde el año 2002, por acuerdo de los accionistas, la cor-poración Comfort Planners se encuentra inactiva en cuanto a sus operaciones; sin embargo, ha permanecido activa con el fin de pagar y cobrar deudas pendientes. Entre las personas que adeudaban dinero a Comfort Planners se encontraba el Sr. Alfredo Domenech Guerrero quien hacía negocios como Air-eare Technology. Por tal razón, el 18 de junio de 2004, el Ledo. Luis Sánchez Sevillano presentó una demanda en cobro de dinero contra el señor Domenech Guerrero en representación de Comfort Planners. Dicha demanda fue presentada en el Tribunal de Primera Instancia, Sala de Manatí, y fue identificada como Comfort Planners, Inc. v. Alfredo Domenech Guerrero h/n/c Aircare Technology, Civil Núm. Cd-2004-539.
4. Varios días antes de la celebración de la vista sobre el estado de los procedimientos pautada para el 27 de octubre de 2004, el Ledo. Damián Planas Merced, representante legal del señor Domenech Guerrero, se comunicó por teléfono con el se-ñor Rodríguez Domínguez, en presencia de su cliente. La co-municación fue con el propósito de indagar si éste tenía cono-cimiento sobre la demanda presentada e informarle sobre la fecha, hora y lugar en que se celebraría la primera vista en el caso.
5. Debido a que al momento desconocía que se hubiera pre-sentado tal reclamación y ante la información ofrecida por el licenciado Planas Merced, el señor Rodríguez Domínguez com-pareció a la vista señalada para el 27 de octubre de 2004 en el Tribunal de Primera Instancia, Sala de Manatí. Mientras el *188 señor Rodríguez Domínguez se encontraba en el Tribunal de Manatí, se le acercaron el señor Domenech Guerrero y el li-cenciado Planas Merced quien volvió a mencionarle lo discu-tido previamente por teléfono. La conversación entre ambos fue interrumpida por la llegada del licenciado Sevillano Sánchez. A preguntas del licenciado Sevillano Sánchez, el se-ñor Rodríguez Domínguez le indicó que se encontraba allí por-que el licenciado Planas Merced se comunicó con él para infor-marle sobre el proceso que se estaba llevando a cabo y decidió asistir por desconocer lo que sucedía. El licenciado Sevillano Sánchez le informó que su comparecencia no era necesaria porque se trataba de la primera vista sobre el estado de los procedimientos.
6. Llamado el caso, el licenciado Sevillano Sánchez informó al Tribunal sobre la comunicación del licenciado Planas Mer-ced con el señor Rodríguez Domínguez. Ante lo expresado, la jueza Gloria Sierra Henríquez apercibió al licenciado Planas Merced que no debía tener contacto con el señor Rodríguez Domínguez y que cualquier comunicación debía realizarse a través del abogado.
7. Tras varios incidentes procesales, el 9 de julio de 2008, el Tribunal de Primera Instancia dictó sentencia en el caso Comfort Planners, Inc. v. Alfredo Domenech Guerrero h/n/c Aircare Technology. Dicha Sentencia fue notificada el 10 julio de 2008. Mediante Certificación de 13 de agosto de 2008, la Secretaria del Tribunal de Apelaciones certificó que no surgía del registro automatizado de casos que dentro del periodo com-prendido desde el 24 de enero de 1995 hasta el 20 de agosto de 2008 se hubiera presentado un recurso ante dicho ese Tribunal cuyo epígrafe leyera: Estado Libre Asociado de Puerto Rico, Comfort Planners, Inc. v. Alfredo Domenech Guerrero h/n/c Aircare Technology.
8. En realidad, Comfort Planners presentó una apelación el 13 de agosto de 2008 y el 22 de agosto de 2008 se notificó de ello al licenciado Planas Merced. Mediante Sentencia de 24 de octubre de 2008, el Tribunal de Apelaciones revocó la determi-nación del Tribunal de Primera Instancia. Concluyó que Comfort Planners tenía legitimación activa para presentar la reclamación judicial como consecuencia de la renovación de su certificado de incorporación. Encontró que Comfort Planners había renovado su certificado de incorporación el 3 de enero de 2008, y lo había acreditado ante el foro de instancia antes de que éste emitiera la sentencia apelada. Determinó también que, en virtud del Artículo 11.02 de la Ley General de Corpo-raciones, 14 L.P.R.A. sec. 3102, la cancelación del certificado de incorporación por no haberse presentado los informes anua- *189 les requeridos no privó a Comfort Planners automáticamente de su capacidad para demandar y ser demandada como ente corporativo. Por el contrario, según la disposición señalada, la corporación quedó renovada y establecida con la misma fuerza y vigor como si no hubiera perdido validez en el ínterin. Por tanto, el Tribunal de Apelaciones devolvió el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.(2)
9. El querellado, licenciado Planas Merced se ha mantenido firme en su posición de que no ha habido prueba clara, robusta y convincente de que el señor Rodríguez Domínguez fuera parte del proceso o parte representada por abogado, por lo que no se violó el Canon 28 de Ética Profesional, como se le imputa.
10. El querellado admite que hizo una llamada al señor Ro-dríguez Domínguez el 16 de octubre de 2004, pero aduce que lo hizo con la certeza de que éste no era parte en el pleito en ese momento y para auscultar la posibilidad de incluirlo como parte demandada. Informe de la Comisionada Especial al Honorable Tribunal Supremo, págs. 13-15.
Acorde y con las determinaciones de hechos reseñadas, la Comisionada concluyó que el querellado no debió haber intervenido con el quejoso, constituyendo tal conducta una violación al citado Canon 28.
I
El Canon 28 del Código de Ética Profesional dis-pone lo siguiente:
El abogado no debe, en forma alguna, comunicarse, negociar ni transigir con una parte representada por otro abogado en ausencia de éste. Particularmente, debe abstenerse de aconse- *190 jar o incurrir en conducta que pueda inducir a error a una parte que no esté a su vez representada por abogado.
En In re Andréu, Rivera, supra, pág. 825, explicamos la razón de ser de esta limitación a la conducta de los aboga-dos que litigan en nuestra jurisdicción. En In re Axtmayer Balzac, 179 D.P.R. p. 16 (2010), reiteramos ese criterio como sigue:
Este Canon regula las comunicaciones que emiten los abo-gados de una parte hacia la parte contraria. Su propósito [es] evitar que los abogados obtengan una ventaja indebida me-diante acercamientos inapropiados y anti éticos hechos a una parte en ausencia de su representación legal, como también prevenir que los abogados induzcan a error a personas que no están representadas legalmente. De esa manera se salva-guarda el privilegio abogado-cliente y el derecho de los litigan-tes a obtener una representación legal adecuada.
En lo que nos atañe, el Canon 28, supra, prohíbe que el abogado de una parte se comunique con la otra parte en ausencia de su representante legal. En cuanto a quiénes deben considerarse “parte” para propósito de esta prohibición, en In re Andréu, Rivera, supra, págs. 825 — 826, explicamos que ese término “no se circunscribe a la entidad corporativa”, puesto que las corporaciones, “como regla general, actúan por conducto de directores y oficiales, encargados de dirigir sus asuntos y negocios”. Por eso, los directores, empleados u oficiales de una corporación pueden ser partes en una acción judicial instada contra la corporación.
Para determinar si una persona en particular lo es, a los efectos del canon, se deben considerar factores como el cargo que ésta ocupa, su poder para tomar decisiones y su autoridad para vincular a la corporación o para hablar a nombre de ésta. In re Andréu, Rivera, supra, pág. 829; In re Axtmayer Balzac, supra. Véase, también, In re Amundaray Rodríguez I, 172 D.P.R. 60 (2007). Además, en In re Castillo Herrera, 159 D.P.R. 276, 279 (2003), recono- *191 cimos que el Canon 28, supra, no sólo pretende evitar que los abogados de una parte hagan acercamientos inapropia-dos a personas obviando a sus representantes legales, sino que “[tjambién tiene por finalidad prevenir que los aboga-dos induzcan a personas que carecen de representación legal”. (Enfasis suprimido.) Cabe señalar que la intención del abogado al comunicarse con una parte contraria no es pertinente. Puede tener las mejores intenciones, pero la frontera trazada por el canon tiene que respetarse. In re Guzmán Rodríguez, 167 D.P.R. 310 (2006). Véase, también, In re Martínez Lloréns, 158 D.P.R. 642 (2003).
r — 1 I — i
El señor Rodríguez Domínguez era uno de los dos accio-nistas de la corporación demandante en el caso presentado ante el Tribunal de Primera de Instancia. En ese caso se reclamaba, a nombre de la corporación el pago de una deuda alegadamente debida a ésta por el cliente del licen-ciado Planas Merced.
Si aplicamos los criterios desarrollados por nuestra ju-risprudencia, es del todo previsible que, en una corporación constituida por sólo dos accionistas, ambos tengan algún grado de poder para tomar decisiones y autoridad para vin-cular a la corporación o hablar a nombre de ésta. El licen-ciado Planas Merced no demostró lo contrario, sino que descansó en meras alegaciones relacionadas a la cancela-ción del certificado de Comfort Planners por la falta de pago de los derechos anuales. Además, nos parece evidente que aunque la corporación hubiese sido disuelta, como alegó el licenciado Planas Merced, el resultado de un caso de cobro de una deuda corporativa podría afectar a quienes fueron sus accionistas. Igual de evidente nos parece que el licenciado Planas Merced era consciente de esa posibilidad, pues, según explicó en su moción en cumplimiento de or- *192 den presentada el 23 de julio de 2007, invitó al señor Ro-dríguez Domínguez al tribunal “para que se enterara y tu-viera su día en corte”. Por otra parte, no hay duda de que los acercamientos del licenciado Planas Merced podían in-ducir a error al señor Rodríguez Domínguez, quien carecía de representación legal.
No podemos permitir que un abogado se escude tras su-tilezas y sofismos para evadir su responsabilidad ética. Por eso, considerado todo lo anterior, resolvemos que la comu-nicación del licenciado Planas Merced con el señor Rodrí-guez Domínguez fue una comunicación ex parte que violó el Canon 28, supra.
Hemos señalado que una vez se demuestra que un abogado o abogada ha traspasado los límites de su responsabilidad ética, la sanción que habremos de imponer estará condicionada, no sólo por la gravedad de la violación, sino por factores tales como: (1) la buena reputación del abogado en la comunidad, (2) su historial previo, (3) si constituye su primera falta y si ninguna parte ha sido perjudicada, (4) la aceptación de la falta y su sincero arrepentimiento, (5) si se trata de una conducta aislada, (6) el ánimo de lucro que medió en su actuación, (7) el resarcimiento al cliente y (8) cualquier otra consideración, ya sea atenuante o agravante, que sea pertinente en conformidad con los hechos. In re Quiñones Ayala, 165 D.P.R. 138 (2005).
Tomando en consideración que esta es la primera vez que se le imputa una falta ética al querellado, limitamos la sanción a la suspensión de la práctica de la profesión por un término de tres meses.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton reco-mienda que la sanción en este caso sea una suspensión por un mes.

 Junto a su moción, el abogado renunciante incluyó copia de una resolución del Tribunal de Apelaciones de 25 de agosto de 2008, en la que se concedió a la parte apelada un término de veinte días para expresar su posición con relación al recurso presentado. Esta resolución fue notificada el 4 de septiembre de 2008. Además, se incluyó copia de la notificación de presentación de recurso de apelación en el Tribunal de Apelaciones de 22 de agosto de 2008. Esta notificación fue enviada al licen-ciado Planas Merced y al Secretario General del tribunal de Manatí.

 Específicamente, el foro apelativo resolvió que
“[d]e acuerdo con ese mismo articulado, tal reinstalación validará todo contrato, acto, asunto tramitado o cosa hecha por la corporación y los oficiales o agentes de la corporación dentro del alcance de su certificado de incorporación, durante el término que el mismo estuvo ineficaz o írrito, como si el certificado de incorporación hubiera subsistido en todo momento para todos los fines con igual fuerza y vigor. Así también, se establece que la corporación será exclusivamente responsable por todo contrato otorgado, acto, asunto tramitado o cosa hecha en representación de la corporación por sus oficiales y agentes antes de su restablecimiento como si el certificado de incorporación hubiera permanecido en todo momento en plena fuerza y vigor.”