EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Armando F. Pietri Torres <br> (TS-11,646) | 2018 TSPR 200 <br><br> 201 DPR ____ |

Número del Caso:  CP-2016-8


Fecha: 11 de diciembre de 2018


Abogada del querellado:


      Por derecho propio


Oficina del Procurador General:


      Lcdo. Luis E. Román Negrón
      Procurador General

      Lcdo. Joseph Feldstein del Valle
      Subprocurador General

      Lcda. Karla Z. Pacheco Álvarez
      Subprocuradora General

      Lcda. Susana I. Peñagarícano Brown
      Procuradora General Auxiliar

      Lcda. Yaizamarie Lugo Fontánez
      Procuradora General Auxiliar


Comisionada Especial:

      Hon. Georgina Candal Segurola


Materia:  La suspensión será efectiva el 20 de diciembre de 2018, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Armando F. Pietri Torres                    CP-2016-8
    (TS-11,646)

*PER CURIAM*

En San Juan, Puerto Rico, a 11 de diciembre de 2018.

I

El 26 de junio de 1996 admitimos al Lcdo. Armando F. Pietri Torres (licenciado Pietri Torres o querellado) al ejercicio de la abogacía. En el 2014, este era vecino de la Sra. Carmen Lydia Hernández Maldonado (quejosa o señora Hernández Maldonado) y de su entonces esposo el Sr. Iván Rodríguez Morales. El 26 de noviembre de 2014 a las 5:00 p.m., el licenciado Pietri Torres y la quejosa -quienes se conocían hacía 2 años- se encontraron en el estacionamiento del condominio donde ambos residían. Estos dialogaron por aproximadamente 45 minutos sobre la decisión del señor Rodríguez Morales de divorciarse de la quejosa, los problemas que atravesaba la relación

matrimonial y las alternativas para manejar el proceso de divorcio.[1] Al licenciado Pietri Torres le sorprendió que el señor Rodríguez Morales quisiera desalojar a la quejosa del apartamento, por lo que le dijo que hablaría con su esposo para que la dejara pasar allí la época festiva.[2] El querellado también le aconsejó que no se peleara con el señor Rodríguez Morales para él poder atenderlos a los dos.

Además, acordaron que la señora Hernández Maldonado visitaría la oficina del licenciado Pietri Torres el 1 de diciembre de 2014, pero cuando la quejosa acudió al despacho este no se encontraba. Sin embargo, durante ese día -1 de diciembre de 2014- ambos sostuvieron el intercambio siguiente

---

[1] Ese mismo día, se cursaron los siguientes mensajes de texto:
- Lcdo. Armando F. Pietri Torres a las 8:14 p.m.: "Carmen perdona que te [haya] molestado cuando sal[í]as ok."
- Sra. Carmen Lydia Hernández Maldonado a las 8:43 p.m.: "No al contrario...gracias a ti por escucharme...Buenas noches".
- Licenciado Pietri Torres a las 8:44 p.m.: "Carmen Iván te da hasta 30 nov."
- Señora Hernández Maldonado a las 8:49 p.m.: "Lo lamento mucho de verdad...pero dile que salgo del aprt el mismo día del divorcio...créeme que si puedo solucionarlo antes lo voy a hacer."
- Licenciado Pietri Torres a las 8:50 p.m.: "Te puedo llamar"
- Señora Hernández Maldonado a las 8:50 p.m.: "Sí"

Asimismo, el 30 de noviembre de 2014 ocurrió el siguiente intercambio:
- Licenciado Pietri Torres a las 1:57 p.m.: "Buenas tardes es Lcdo. Pietri, me llamó Iván para saber la hora que tú ibas a desalojar apto. Cuídate y perdona la molestia".
- Señora Hernández Maldonado a las 2:30 p.m.: "Buenos días Pietri, disculpa mi atrevimiento de escribirte...Es que habl[é] con Iván hoy para pedirle tratar de llegar a unos acuerdos lo más civilizados posible...le pedí lo siguiente:
    1) Que me diera hasta el día 5 para mudarme.
    2) Que para poder mudarme c[o]mo es su deseo necesito me preste $5 mil dólares para cubrir los gastos más indispensables como agua, luz, nevera, estufa, renta, etc.
    3) Qu[e] me permita usar la guagua para poder trabajar. No le pido nada más y simplemente se termina con esto. Espero su contestación...Nuevamente disculpas".

Mensajes de Texto Estipulados, Informe de la Comisionada Especial, págs. 17-18.

[2] Determinaciones de Hechos, Informe de la Comisionada Especial, pág. 22.

por mensaje de texto:

> Señora Hernández Maldonado a las 4:58 p.m.:
> "Pietri...Buenas tardes...Como abogado que me dijiste[] que vas a hacer de Iván y mío que me propones que haga estoy desesperada y no puedo ni quiero seguir así".

> Licenciado Pietri Torres a las 10:45 p.m.:
> "Necesito cert matrimonio nada más los demás acuerdos no s[é] qu[é] van a hacer nada más y no quiero entrar en dimes y diretes, tomen sus decisiones y eviten meterse en problemas de ley 54 ok si no tengo cert matrimonio y capitulaciones nada puedo hacer. Me pesa mucho todo esto pero tienen que resolver entre ustedes yo no tengo opinión sobre nada, son mis vecinos y como abogado solo actuó ok, a ti Carmen o perdonas o te quedas calladita, buenas noches ok."

> Señora Hernández Maldonado a las 10:54 p.m.:
> "Tienes razón Gracias...Buenas noches".[3]

El 4 de diciembre de 2014 la quejosa, representada por la Lcda. Ivonne García Torres, presentó una acción de divorcio por la causal de trato cruel contra el señor Rodríguez Morales (Carmen Hernández Maldonado v. Iván J. Rodríguez Morales, J DI-2014-0961). Entre otras cosas, reclamó el apartamento donde vivían como su residencia mientras se dilucidaba el pleito. El 11 de diciembre de 2014 el señor Rodríguez Morales, siendo representado por el licenciado Pietri Torres, contestó la demanda y presentó una reconvención por ruptura irreparable.[4]

---

[3] Mensajes de Texto Estipulados, Informe de la Comisionada Especial, págs. 17-18.

[4] En su contestación a la demanda, el señor Rodríguez Morales aceptó que le solicitó a la señora Hernández Maldonado que abandonara el apartamento, ya que existía un contrato de arrendamiento suscrito por él con un tercero y que aplicaba la separación absoluta de bienes como consecuencia de unas capitulaciones matrimoniales. Estipulaciones, Informe de la Comisionada Especial, pág. 13.

Por otro lado, el 15 de diciembre de 2014 el señor Rodríguez Morales presentó por derecho propio una acción al amparo de la Ley de Controversias y Estados Provisionales de Derecho, Ley Núm. 140 de 23 de julio de 1974 (Ley Núm. 140), 32 LPRA sec. 2871 et seq., para solicitar el desalojo de la quejosa del apartamento (Caso Civil Núm. JAQ-2014-743). El 22 de diciembre de 2014 se celebró una vista en el caso sobre Ley Núm. 140 a la cual compareció el señor Rodríguez Morales, representado por el licenciado Pietri Torres, y la quejosa, representada por el Lcdo. Pablo Colón Santiago.

A pesar de que el querellado sabía que la quejosa tenía representación legal en ambos procedimientos, el 30 de diciembre de 2014 se comunicó con esta por teléfono y dialogaron sobre asuntos relacionados al divorcio, así como el desalojo del apartamento.[5] En particular, el licenciado Pietri Torres  intentó disuadir a la quejosa para  que no se

---

[5] Íd., pág. 14. Además, se cursaron, entre otros, los mensajes de texto siguientes:
- Licenciado Pietri Torres a las 7:57 p.m.: "Carmen tengo tus emails y la interven[ción] del Lcdo. José Rivera. Esto no es juego vas a seguir con ese curso de acción diciendo en el trib una cosa y actuando de otra forma?"
- Señora Hernández Maldonado a las 9:22 p.m.: "Acabo de ver este mensaje...  Y no entiendo???"
- Licenciado Pietri Torres a las 9:21 p.m.: "Llama"
- Licenciado Pietri Torres a las 9:25 p.m.: "Es claro t[ú] lo que estás diciendo no es correcto y esto nunca se usará en un tribunal pero me da pena que en desesperación te pongas as[í] ok y yo bien claro soy ok".

Posteriormente, el señor Rodríguez Morales le envió un mensaje al licenciado Pietri Torres y este lo reenvió a la señora Hernández Maldonado, lo cual comenzó la siguiente conversación:
- (Mensaje reenviado a las 9:25 p.m.) Bdias. Pietri: José quiere ser redentor entre las partes, aparentemente ella regresó todo el mobiliario en el apt y quiere que José vaya a ver el apt y José dice que ella está (...) que le suba la oferta de dinero. Yo le envié el listado y le dije que Yo iba con [é]l al Apt y no quiere que [y]o vaya, todo lo que hay o deja de haber lo se Yo, pa que Jos[é] va a ir solo??"

divorciara debido a que su cliente no quería.

Posteriormente, en el caso de divorcio, la señora Hernández Maldonado solicitó la descalificación del licenciado Pietri Torres. Alegó que este le indicó que la representaría legalmente. No obstante, luego de que esta le contara los pormenores del caso y de que el licenciado le brindara consejo legal, este terminó asumiendo la representación legal de la parte contraria.[6] Además, señaló que el licenciado Pietri Torres se comunicó con ella, a pesar de conocer que tenía representación legal. Luego de celebrar una vista evidenciaria, el foro primario emitió una *Resolución y Orden* mediante la cual descalificó al querellado. Indicó que:

> Aun cuando el Lcdo. Pietri niega que se haya perfeccionado la relación abogado-cliente, el intercambio de los mensajes de texto, cuando menos, permite concluir que hubo algo más que un dialogo entre amigos. El Lcdo. Pietri no le aclaró a la parte demandante sobre su error al decir en el mensaje de texto: "…Como abogado que me dijiste[] que vas hacer de Iván y mío…". Por el contrario, el Lcdo. Pietri le contestó requiriéndole el certificado de matrimonio y las capitulaciones matrimoniales.[7]

---

- Licenciado Pietri Torres: "Eso fue una parte de la conversación con José Rivera no compliques esto ok y siente que yo no soy una rata soy abogado ok".
- Licenciado Pietri Torres a las 9:30 p.m.: "Se prudente ok".
- Licenciado Pietri Torres a las 9:31 p.m.: "Llama" "O te puedo llamar yo a ti"
  [...]
- Señora Hernández Maldonado a las 9:34 p.m.: "Llame"
  [...]
- Licenciado Pietri Torres: "Que más quieres está evitando una ley 54 que m[á]s oye no le dije que eres una persona sin corazón".

Mensajes de Texto Estipulados, Informe de la Comisionada Especial, págs. 19-20.

[6] También solicitó la descalificación en el procedimiento al amparo de la Ley Núm. 140 y se declaró con lugar la petición. Véase, Contestación a la querella, Anejo 8, *Resolución* de 20 de enero de 2015.

[7] Contestación a la querella, Anejo 7, *Resolución y Orden*, pág. 4. Posteriormente, se declaró disuelto el vínculo matrimonial entre la

La señora Hernández Maldonado presentó una queja contra el licenciado Pietri Torres por estos hechos. Consideró que el querellado violó el canon sobre intereses encontrados al proveerle consejo legal e identificarse como su abogado, para posteriormente representarlos a los dos y finalmente a su ex esposo exclusivamente. Asimismo, indicó que el licenciado incurrió en una violación ética al comunicarse con ella para hablar sobre asuntos relacionados al caso de divorcio y solicitarle que desistiera, a pesar de conocer que contaba con representación legal.[8]

Así las cosas, referimos este asunto a la Oficina del Procurador General para investigación e informe. En cumplimiento con la encomienda, dicha oficina presentó un informe en el cual concluyó que existía evidencia suficiente para sostener las alegaciones de la quejosa en cuanto al conflicto de intereses (representación simultánea adversa), las comunicaciones directas con la parte contraria y el no evitar la apariencia de conducta profesional impropia. Por tanto, consideró que el querellado pudo haber infringido los Cánones 21, 28 y 38 de Ética Profesional, 4 LPRA Ap. IX.[9]

---

quejosa y el señor Rodríguez Morales por ruptura irreparable. Estipulaciones, Informe de la Comisionada Especial, pág. 16.

[8] La señora Hernández Maldonado también alegó que el licenciado Pietri Torres la insultaba y le gritaba cuando se la encontraba en lugares públicos. Sin embargo, estas alegaciones no se incluyeron en los cargos que presentó el Procurador General en la Querella.

[9] El Procurador General también indicó que el querellado no mostró indicios de aceptación o arrepentimiento en cuanto a las violaciones imputadas. Asimismo, señaló que este Tribunal lo amonestó previamente por violar el deber de diligencia que requiere el Canon 18 de Ética Profesional, 4 LPRA Ap. IX. Véase In re Pietri Torres, 191 DPR 482 (2014). Por otro lado, destacó como atenuante que ninguna persona resultó perjudicada y no surge que el licenciado se haya lucrado.

Examinado ese escrito, así como la réplica que presentó el licenciado Pietri Torres, ordenamos al Procurador General a presentar una querella. En esta, se incluyeron los cargos siguientes:

> A. PRIMER CARGO: El licenciado Pietri Torres incurrió en un conflicto de interés al representar al Sr. Rodríguez Morales en el caso de divorcio, Caso Civil Núm. J DI2014-0961, y querella, Civil Núm. JAQ2014-0743, sobre controversias y estados provisionales de derecho a tenor con la Ley 140-1974, aun cuando previamente la Sra. Hernández Maldonado le consultó, discutió y recibió orientación sobre asuntos relacionados a la relación matrimonial y el proceso de divorcio, lo cual constituye una relación sustancial entre ambas representaciones, en contravención a los preceptos del Canon 21 de Ética Profesional, el cual establece el deber de lealtad completa, incluyendo el no representar intereses encontrados.
>
> B. SEGUNDO CARGO: El licenciado Pietri Torres violó los preceptos del Canon 28 de Ética Profesional al comunicarse directamente con la Sra. Hernández Maldonado durante el trámite de divorcio, en el que dicho abogado representaba a la parte contraria, para discutir particularidades del divorcio a pesar de saber que la Sra. Hernández Maldonado tenía representación legal.
>
> C. TERCER CARGO: El licenciado Pietri Torres violó el Canon 38 de Ética Profesional al no exaltar el honor y la dignidad de la profesión, aunque al así hacerlo conlleve sacrificios personales, al asumir la representación legal del Sr. Rodríguez Morales en el caso de divorcio y de la Ley 140, cuando previamente había asesorado a la Sra. Hernández Maldonado sobre dicho asunto, y ante las comunicaciones incurridas por el Lcdo. Pietri Torres con la Sra. Hernández Maldonado con posterioridad al procedimiento judicial instado, faltando así a su lealtad como abogado y a su deber de evitar la apariencia de conducta impropia.[10]

El querellado replicó que la conversación que sostuvo con la señora Hernández Maldonado no creó una relación

---

[10] Querella, págs. 7-9.

abogado-cliente, ya que "el encuentro (...) fue uno casual, no premeditado, en el estacionamiento del complejo donde tanto ella como yo vivíamos, no fue una situación planificada con la intención de pedir explicaciones sobre la situación de su matrimonio (...)".[11] Asimismo, destacó que no existe información que él pudo haber utilizado en contra de la quejosa. Por otro lado, mencionó que el Juez del Tribunal de Primera Instancia que lo descalificó no elevó el asunto ante este Foro, lo cual él considera que se debe a que el Juez entendió que no ocurrió una violación ética. Señaló que la queja es frívola y que se presentó con la intención de causarle daño a su reputación y de obtener un beneficio.[12]

Posteriormente, nombramos a la Hon. Georgina Candal Segurola, Ex Jueza Superior del Tribunal de Primera Instancia, como Comisionada Especial para que recibiera la prueba y nos rindiera un informe con las determinaciones de hechos y las recomendaciones que estimara pertinente. En la vista en su fondo, el querellado declaró, entre otras cosas, lo siguiente:

> (1) Se encontró con la señora Hernández en el estacionamiento donde reside y ella le contó que tenía problemas matrimoniales con su esposo, el Sr. Iván Rodríguez Morales. Sostuvieron una conversación de unos 45 minutos y hablaron del divorcio entre el señor Rodríguez Morales y la señora Hernández.

---

[11] Contestación a la querella, pág. 4.
[12] El querellado asevera que el interés de la señora Hernández Maldonado es uno económico. En particular, menciona que "cuando hubo conversaciones extrajudiciales ofreciéndole dinero a la señora Hernández, a través de la Lcda. Ivonne García, esta no reclamó ningún conflicto o violación ética, su interés en el dinero es evidente, si hay dinero no hay violación ética". Íd.

(2) El licenciado Pietri Torres le indicó a la señora Hernández que iba a hablar con el señor Rodríguez Morales porque él quería "botarla del apartamento" y tenían capitulaciones y era el señor Rodríguez Morales quien había alquilado el apartamento donde ambos residían.

(3) El licenciado Pietri le indicó a la señora Hernández que no se pelearan y que él podía atenderlos a los dos en el divorcio, porque era consentimiento mutuo.

(4) No pactó honorarios con la señora Hernández y le indicó a ella que él iba a mediar. Nunca le dijo a ella que iba a ser abogado de la señora Hernández. Tampoco le dijo que iba a ser abogado del señor Rodríguez Morales. La señora Hernández nunca le pagó honorarios de abogado.

(5) El señor Rodríguez Morales "cambió de parecer y quería sacarla antes de la Navidad".

(6) La señora Hernández quería unos $3,000 para mudarse del apartamento y también le pidió al licenciado Pietri Torres dinero por retirar la queja.

(7) El licenciado Pietri Torres indicó que "él actuó como mediador" porque la señora Hernández no se podía quedar en la calle.

(8) El licenciado Pietri Torres insistió en que "no había ningún conflicto", que solo había el propósito de ayudar y de evitar que dos vecinos se pelearan, pero que hubo divergencias de criterio. Igualmente negó que hubiera conflicto de intereses o de representación sucesiva.

(9) El licenciado Pietri Torres expresó que: "Tiene arrepentimiento sobre todo" y que no hubo lucro alguno. Indicó que el procedimiento disciplinario le había servido de aprendizaje.

(10) El licenciado Pietri Torres aseveró que podía representar a dos personas por consentimiento mutuo, pues creía que no era contencioso y no había desventaja. Aseguró que "había que terminar el matrimonio".

(11) El licenciado Pietri aceptó la violación a los Cánones 21 y 28 de los Cánones de Ética Profesional. Aceptó estar consciente de que un abogado viola los

cánones aunque el cliente acepte la conducta del abogado.[13]

En su Informe, la Comisionada señaló que los hechos estipulados demuestran que el licenciado Pietri Torres incurrió en la conducta prohibida por el Canon 21 de Ética Profesional, supra, en su modalidad de intereses encontrados. Indicó que, a pesar de que el encuentro entre la quejosa y el licenciado Pietri Torres el 26 de noviembre de 2014 ocurrió por casualidad, la conversación que sostuvieron trató sobre las dificultades matrimoniales, las alternativas para atender la situación del divorcio, que el señor Rodríguez Morales quería que la quejosa desalojara la vivienda, entre otras cosas. Detalló que el querellado aconsejó a la quejosa en cuanto a la situación y se ofreció a hablar con el señor Rodríguez Morales para que no la desalojara hasta pasar la época festiva.

La Comisionada destacó que desde ese día surgía de los mensajes de texto una discordia en cuanto al desalojo de la señora Hernández Maldonado que hacía impropio que el licenciado proveyera a ambos representación legal. No obstante lo anterior, el querellado omitió informarle a la quejosa que no la representaría y, en cambio, le solicitó los documentos para el divorcio, es decir, el certificado de matrimonio y las capitulaciones matrimoniales.

La Comisionada determinó además que el licenciado Pietri

---

[13] Informe de la Comisionada Especial, págs. 8-10. También aceptó que no existía una carta de la Lcda. Ivonne García Torres, representante legal de la quejosa en el caso de divorcio, autorizándolo a hablar con la señora Hernández Maldonado. Íd., pág. 9.

Torres violó el Canon 28 de Ética Profesional, supra, al comunicarse con la quejosa durante el trámite del divorcio, a pesar de que esta contaba con representación legal. Incluyó como una determinación de hecho en el Informe que los mensajes de texto estipulados demostraron:

> que el licenciado Pietri pretendía influir en la conducta de la señora Hernández en los procedimientos que se estaban llevando a cabo en el divorcio y en el procedimiento bajo la Ley 140 para el desalojo de la señora Hernández. Esto es, haciendo referencia a lo que la señora Hernández alegaba ante el tribunal y que el licenciado catalogaba como que no era correcto. Así como exhortando a la señora Hernández a que fuera prudente.[14]

Además, señaló que entre los mensajes a la señora Hernández Maldonado se encontraba el reenvió de comunicaciones que el propio cliente del querellado, el señor Rodríguez Morales, le envió a este con relación a la controversia del desalojo del apartamento.

Por último, concluyó que el querellado infringió el Canon 38 de Ética Profesional, supra, al representar al señor Rodríguez Morales en los trámites de divorcio y de Ley Núm. 140, a pesar de haber asistido y aconsejado a la quejosa en cuanto a los mismos procedimientos, en los cuales ambas partes tenían intereses incompatibles. También entiende que el licenciado mancilló la consecución de la mejor administración de la justicia al negarse a renunciar a la representación legal del señor Rodríguez Morales en ambos pleitos, lo cual conllevó que se celebraran vistas para

---

[14] Íd., pág. 25.

evaluar su descalificación. La Comisionada resaltó, además, que el licenciado declaró en una de las vistas que podía representar a ambas partes en un caso de divorcio por consentimiento mutuo si no hay objeción de ninguna naturaleza, lo cual es contrario al Canon 21 de Ética Profesional, supra, que prohíbe representar intereses encontrados, aun con la anuencia de ambas partes.

En cuanto a la sanción, la Comisionada indicó que el licenciado Pietri Torres, entre otras cosas: (1) expresó su arrepentimiento, aunque fue inconsistente al justificar sus actos e indicar que pretendía ayudar a sus vecinos; (2) negó inicialmente las faltas a los Cánones 21, 28 y 38; y (3) fue amonestado previamente por este Tribunal por incumplir con el Canon 18 de Ética Profesional, supra, en In re Pietri Torres, 191 DPR 482 (2014). Por otro lado, señaló que el querellado presta servicio *pro bono* hace años y su reputación en la comunidad es buena. En consideración a estos factores, recomendó que se le ordene al licenciado Pietri Torres tomar un curso sobre los Cánones 21 y 28 de Ética Profesional y se suspenda de la profesión legal por 3 meses.

El querellado compareció y se opuso a la recomendación de la Comisionada Especial en cuanto a la suspensión por 3 meses.

II

El Canon 21 de Ética Profesional, supra, dispone que:

El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras

personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.

No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.

La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aún cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.

Este Canon le impone a los miembros de la profesión legal el deber de ser leal a su cliente y de evitar incurrir en la representación de intereses encontrados. In re Ortiz, Rivera, 195 DPR 122, 132-133 (2016); In re Reyes Coreano, 190 DPR 739, 753 (2014). Como parte de la lealtad requerida, el letrado debe ejercer un criterio profesional independiente y no puede revelar confidencias que el cliente le haya comunicado. In re Reyes Coreano, supra, pág. 754; In re Pérez Marrero, 185 DPR 449, 457 (2012). En particular, debe abstenerse de aceptar una representación legal, o continuar en esta, cuando: (1) pueda verse afectada por sus intereses personales o expectativas; (2) resulta en una representación simultánea de dos clientes con intereses adversos; o (3) el asunto del

cual trata puede afectar cualquier interés de un cliente anterior. In re Ortiz, Rivera, supra, pág. 133; In re González Hernández, 190 DPR 164, 172-174 (2014).

En cuanto a la representación simultánea adversa, hemos indicado que "todo abogado debe evitar que, en beneficio de un cliente, se abogue por aquello a lo que debe oponerse en cumplimiento de sus obligaciones actuales con otro cliente, puesto que abogaría así por causas contrarias". In re González Hernández, supra, pág. 174. Por lo tanto, para que esta prohibición se active es necesario que exista una relación abogado-cliente dual. Íd.; In re Báez Genoval, 175 DPR 28, 36 (2008).

Igualmente establecimos que, ante esta situación, el abogado no puede justificar el conflicto de interés alegando que no utilizará las confidencias de un cliente en perjuicio del otro. Íd. Lo que procede ante un potencial o actual conflicto de interés es la renuncia del letrado a ambas representaciones. Íd. De esta forma, "se intenta preservar la autonomía del juicio del abogado y prevenir que se diluya la fidelidad que un abogado le debe a su cliente". In re González Hernández, supra, pág. 174.

Otro escenario que prohíbe el Canon 21 y que procede discutir en este caso es la representación sucesiva adversa. Esta se configura cuando un abogado representa a un cliente en un asunto que está sustancialmente relacionado con otro asunto en el cual representó a un cliente anterior y los intereses de ambos son adversos. Íd., pág. 173. Debe existir

una relación abogado-cliente para que aplique este conflicto de interés y, al igual que en la representación simultánea adversa, no se subsana solo porque el letrado alegue que no utilizará las confidencias de sus clientes en perjuicio de estos. In re Báez Genoval, supra, págs. 36-37. Es más, el cliente no tiene que probar que en efecto hubo una violación al principio de confidencialidad, basta con demostrar que "la controversia legal en la que el abogado comparece en su contra esta sustancialmente relacionada con la causa de acción en la que el abogado previamente lo representó". Íd., pág. 37.

En lo pertinente, en In re Orlando Roura, 119 DPR 1 (1987), señalamos que un abogado puede representar a unos cónyuges en una acción de divorcio bajo la causal de consentimiento mutuo, siempre que no surjan diferencias irreconciliables de criterio entre estos. Véase In re González Hernández, supra, pág. 180. En caso de que estas existan y no se logre un acuerdo entre los cónyuges, el letrado está impedido de representar subsiguientemente a cualquiera de ellos. In re Orlando Roura, supra, pág. 7. Señalamos que:

> [e]n su mínima expresión, la naturaleza de las conversaciones y confidencias de los cónyuges que presupone [el trámite de divorcio por consentimiento mutuo] --de surgir después cualesquiera controversias adicionales entre ambos, e independientemente de que se haya culminado o no el divorcio-- obliga a que ese abogado se abstenga de representar a cualesquiera de ellos. In re Orlando Roura, supra, pág. 6.

Asimismo, en In re Peña Clos, 135 DPR 590 (1994), determinamos que se configuró una representación sucesiva adversa porque el Lcdo. Sergio Peña Clos representó a la Sra. Nilda Iris Rivera en un caso de divorcio contra el Sr. Salvador Guzmán cuando anteriormente representó a este último en una demanda de divorcio entre las mismas partes que se archivó por inactividad. Expresamos que al ser los dos casos entre las mismas partes y sobre la misma materia, el licenciado "tenía, o debió tener conocimiento, de las confidencias de ambas partes en relación a este asunto, exponiendo a uno de ellos —en este caso al señor Guzmán— a perjudicarse por la anterior relación profesional con este abogado". Íd., pág. 598.

En Náter v. Ramos, 162 DPR 616 (2004), también evaluamos la conducta de un letrado en un trámite de divorcio.[15] En síntesis, el Sr. Israel Ramos Muñiz contrató al Lcdo. Ovidio López Bocanegra para que redactara las estipulaciones en un divorcio por consentimiento mutuo. Posteriormente, el licenciado citó al otro cónyuge, la Sra. Dulce María Náter Cardona, quien compareció sin representación legal, para presentarle las estipulaciones y que las suscribiera. Sin embargo, a la vista de divorcio el letrado compareció en representación de uno solo de los cónyuges, el señor Ramos Muñiz.

Evaluado el asunto, este Tribunal indicó que la

---

[15] Conviene señalar que la norma ética que se pautó en este caso fue con carácter prospectivo. Véase Náter v. Ramos, 162 DPR 616, 634-635 (2004).

representación conjunta de los cónyuges en un caso de divorcio por consentimiento mutuo es la excepción. Íd., pág. 632. Explicamos que de esa forma se evitaba que el abogado incurriera en un posible conflicto de intereses al negociar las estipulaciones o si surgía un pleito entre los ex cónyuges luego del divorcio. Íd. Igualmente se impedía que el cónyuge con más control sobre los bienes ejerciera una influencia mayor sobre el letrado por ser quien le paga los honorarios. Íd.

Respecto al manejo del asunto por parte del abogado, determinamos que mediante su conducta generó la posibilidad de que efectivamente y en alguna medida representó a ambos cónyuges al citar a la señora Náter Cardona e indicarle qué estipulaciones debía suscribir. Íd., pág. 633. Por lo tanto, contravino el Canon 21 al comparecer luego a la vista de divorcio defendiendo solamente al señor Ramos Muñiz y dejando al otro cónyuge en un estado de indefensión, soslayando así el deber de lealtad que se requiere.

Por otro lado, el Canon 28 de Ética Profesional, supra, establece que: "El abogado no debe, en forma alguna, comunicarse, negociar ni transigir con una parte representada por otro abogado en ausencia de éste. (...)". Este canon evita que los abogados hagan acercamientos inapropiados a una parte en ausencia de la representación legal de esta con el propósito de obtener una ventaja indebida. In re Planas Merced, 180 DPR 179, 190 (2010); In re Axtmayer Balzac, 179 DPR 151, 156 (2010). La prohibición aplica

independientemente de la intención del letrado que realice el acercamiento antiético y del nivel de educación de las partes involucradas. In re Planas Merced, supra, pág. 191; In re Ríos Meléndez, 175 DPR 923, 928 (2009).

Por último, según lo dispuesto en el Canon 38 de Ética Profesional, supra, los miembros de la profesión legal deben "esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia". Es decir, tanto en su vida privada como en su desempeño profesional, estos deben conducirse de forma digna y honorable. In re Rodríguez López, 196 DPR 199, 208 (2016). "Una conducta viola este canon cuando es contraria a los valores principales de la profesión —la dignidad y el honor— (...), de manera que lo hace indigno de pertenecer al foro". In re Pérez Soto, 2018 TSPR 69, 21, 200 DPR ____ (2018). Es decir, no procede determinar que se violó este canon solo porque un abogado o abogada contraviene lo dispuesto en otro canon. In re Lebrón González, 198 DPR 350, 356 (2017).

III

Evaluemos primero si el licenciado Pietri Torres violó el Canon 21 de Ética Profesional. Para ello, debemos analizar si existió una relación abogado-cliente dual. Hemos expresado que "[l]a relación abogado-cliente es una relación *sui generis* que responde en gran medida a las inexorables exigencias éticas de esta profesión". In re Santiago Ríos,

172 DPR 802, 816 (2007). Véase In re Belén Trujillo, 126 DPR 743, 754 (1990). Un miembro de la profesión legal puede desempeñarse como negociador, auditor, defensor, intermediario y consejero, entre otros. In re Santiago Ríos, supra, pág. 817. En particular:

> '[d]e estas funciones, las más comunes son las de defensor y consejero y a ellas responden los códigos de ética. De hecho, la función de consejero y defensor son la base del deber de lealtad en un sistema adversativo de la administración de la justicia y han delineado los contornos de la relación abogado-cliente. La función de consejero es la justificación del deber de confidencialidad, el cliente necesita estar seguro de que existe una relación confidencial para poder revelar aquella información necesaria para obtener un buen consejo legal. La función de defensor en la litigación es la justificación primordial al deber de evitar los conflictos de intereses.' In re Belén Trujillo, supra, pág. 755 citando a L.R. Patterson, Legal Ethics: The Law of Professional Responsibility, Nueva York, Ed. Matthew Bender, 1984, pág. 413.

Igualmente señalamos que la relación abogado-cliente "comienza cuando el cliente acude al abogado a requerir sus servicios profesionales para que lo *asesore* o le *represente* en algún asunto". In re Santiago Ríos, supra, pág. 817.

Examinado el Informe de la Comisionada Especial, así como el expediente de esta querella, concluimos que existió una relación abogado-cliente dual que provocó una violación al Canon 21. A pesar de que el encuentro inicial entre la quejosa y el querellado el 26 de noviembre de 2014 fue uno casual, durante la conversación el licenciado Pietri Torres le creó a la quejosa la expectativa de que los representaría a ambos -a la quejosa y a su entonces esposo- en el divorcio.

Le indicó que hablaría con el señor Rodríguez Morales para llegar a un acuerdo en cuanto al apartamento y dialogaron además sobre las alternativas disponibles para el proceso de divorcio. Lo anterior bajo el entendido, por parte del licenciado, de que el divorcio sería por consentimiento mutuo.

Según expusimos, un abogado puede representar a ambas partes en un divorcio por consentimiento mutuo mientras no surjan diferencias irreconciliables que afecten el deber de lealtad que merece cada cliente. En este caso, los intercambios entre las partes ilustran cómo esta representación simultánea permisible, en el contexto de un divorcio por consentimiento mutuo, se tornó adversa, impermisible y consecuentemente antiética.

Desde el inicio, la diferencia entre las partes respecto a la ocupación del apartamento era patente. El licenciado Pietri Torres trató de mediar entre las partes, pero esa diferencia se siguió deteriorando hasta convertirse en irreconciliable. En cuanto a este asunto, el licenciado Pietri Torres abogó principalmente por los intereses del señor Rodríguez Morales. Primero, le comunicó que el señor Rodríguez Morales le dio 4 días, hasta el 30 de noviembre, para desalojar el apartamento.[16] Luego, a solicitud del señor Rodríguez Morales, le requirió que le informara a qué hora desalojaría el apartamento.[17] Finalmente, consideramos que el

---

[16] Mensajes de Texto Estipulados, Informe de la Comisionada Especial, págs. 17-18.
[17] Íd.

siguiente intercambio por mensaje de texto el 1 de diciembre demuestra que la diferencia entre las partes se tornó en una irreconciliable y que el licenciado no representó adecuadamente los intereses de la señora Hernández Maldonado:

> Señora Hernández Maldonado a las 4:58 p.m.: "Pietri...Buenas tardes...Como abogado que me dijiste[] que vas a hacer de Iván y mío que me propones que haga estoy desesperada y no puedo ni quiero seguir así".

> Licenciado Pietri Torres a las 10:45 p.m.: "Necesito cert matrimonio nada más los demás acuerdos no s[é] qu[é] van a hacer nada más y no quiero entrar en dimes y diretes, tomen sus decisiones y eviten meterse en problemas de ley 54 ok si no tengo cert matrimonio y capitulaciones nada puedo hacer. Me pesa mucho todo esto pero tienen que resolver entre ustedes yo no tengo opinión sobre nada, son mis vecinos y como abogado solo actuó ok, a ti Carmen o perdonas o te quedas calladita, buenas noches ok".[18]

Es decir, ante un mensaje de la quejosa donde esta le solicitó que la asesorara, como abogado de ambos, y le manifestó que estaba desesperada, el licenciado se desentendió del asunto, le indicó que tomara sus propias decisiones, le requirió unos documentos y le sugirió la posibilidad de una incidencia al amparo de la Ley para la Prevención e Intervención con la Violencia Doméstica. Le indicó además que no tenía opinión sobre nada y que perdonara o se quedara callada.

De lo anterior no se puede colegir que el licenciado cumplió con el deber de lealtad completa con respecto a la

---

[18] Mensajes de Texto Estipulados, Informe de la Comisionada Especial, págs. 17-18.

señora Hernández Maldonado. Tampoco podemos concluir que el licenciado Pietri Torres estaba ante una diferencia reconciliable ni que estaba defendiendo intereses no encontrados. Ante ese cuadro, consideramos que el letrado debió renunciar a la representación legal de ambos. Tenía el deber, ante la expectativa que le creó a la señora Hernández Maldonado, de defender igualmente sus intereses en el trámite de divorcio, si es que, como él menciona, era un divorcio por consentimiento mutuo y él los estaba ayudando a ambos. De no poder hacerlo, como en efecto no pudo, debió renunciar inmediatamente ante el conflicto de interés entre las partes.

En consideración a lo anterior, el licenciado también debió abstenerse de representar a alguna de las partes en el pleito de divorcio o en cualquier asunto posterior relacionado. Esto, por "la naturaleza de las conversaciones y confidencias de los cónyuges que presupone [el trámite de divorcio por consentimiento mutuo]". In re Orlando Roura, supra, pág. 6. En cambio, este decidió representar al señor Rodríguez Morales en el procedimiento de divorcio que instó la quejosa y en el caso al amparo de la Ley Núm. 140, por lo que también se configuró una representación sucesiva adversa.

No está en controversia que la quejosa habló con el licenciado Pietri Torres sobre los problemas que atravesaba la relación matrimonial, así como las alternativas para manejar el proceso de divorcio, y que este le indicó que hablaría con el señor Rodríguez Morales para mediar y lograr que llegaran a un acuerdo. Además, le señaló que no se

pelearan, para poder representarlos a ambos en el divorcio por consentimiento mutuo y le pidió documentos como el certificado de matrimonio y las capitulaciones matrimoniales. No obstante lo anterior, luego aceptó representar al señor Rodríguez Morales, el cual claramente tenía intereses contrarios a la quejosa, en el mismo asunto que atendió con la quejosa, es decir, el divorcio. No cabe duda de que esta conducta por parte del licenciado Pietri Torres es contraria al Canon 21 al "poner en peligro el principio de confidencialidad que caracteriza la relación fiduciaria de abogado-cliente y de esa forma menoscabar la imagen de la justicia y la confianza que el ciudadano tiene en el sistema". In re Ortiz Martínez, 161 DPR 572, 579 (2004).

En cuanto al segundo cargo, de las estipulaciones que se incluyeron en el Informe de la Comisionada Especial surge claramente que el querellado se comunicó con la quejosa y discutió asuntos relacionados al divorcio, así como al desalojo del apartamento, a pesar de saber que esta tenía representación legal en ambos pleitos. Más aún, consideramos, al igual que la Comisionada, que el licenciado Pietri Torres pretendía influir en la conducta de la quejosa en los procedimientos al reprocharle lo que esta alegaba por entender que no era correcto, indicarle que fuera prudente y al expresarle: "[q]ue más quieres está evitando una ley 54 que m[á]s oye no le dije que eres una persona sin corazón", entre otras cosas. En consecuencia, el querellado también

incurrió en una violación al Canon 28 de Ética Profesional, supra.

Finalmente, concluimos que la conducta del licenciado Pietri Torres de por sí no exaltó el honor y la dignidad de la profesión. En cambio, este le restó confiabilidad al crear una expectativa en la quejosa de que estaba defendiendo sus intereses en el trámite de divorcio para posteriormente representar a la parte contraria en el caso. Conviene señalar que, no solo colocó a la señora Hernández Maldonado en una situación vulnerable al comparecer representando al señor Rodríguez Morales, sino que también intentó que esta modificara su conducta y alegaciones en los casos. Por lo tanto, violó el Canon 38 de Ética Profesional, supra.

Expuesto lo anterior, nos corresponde determinar qué sanción debemos imponer, en consideración a:

> (1) la buena reputación del abogado en la comunidad; 2) su historial previo; 3) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; 4) la aceptación de la falta y su sincero arrepentimiento; 5) si se trata de una conducta aislada; 6) el ánimo de lucro que medió en su actuación; 7) el resarcimiento al cliente; y 8) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien según los hechos. In re Flores Martínez, 199 DPR 691, 704 (2018).

Surge del expediente personal del licenciado Pietri Torres que en la queja AB-2010-0001 se le apercibió por faltar a su deber de cortesía en cuanto a una Fiscal.[19] Asimismo, lo amonestamos mediante una Opinión *Per Curiam* por violar el

---

[19] Véase Resolución de 24 enero de 2013. Se le apercibió que de repetirse una conducta que incida en la normativa ética que rige el ejercicio de la

deber de diligencia que impone el Canon 18 de Ética Profesional, supra, y le apercibimos que en el futuro se abstuviera de incurrir en conducta que lesionara los estándares éticos de la profesión. In re Pietri Torres, 191 DPR 482 (2014). Por su parte, la Comisionada Especial señala que el licenciado Pietri Torres: (1) expresó su arrepentimiento, aunque fue inconsistente al hacer justificaciones indicando que pretendía ayudar a sus vecinos y actuar como mediador; (2) negó inicialmente las faltas a los Cánones 21, 28 y 38, y (3) hasta el momento no ha resarcido al cliente.[20] Además, surge del Informe que el querellado goza de buena reputación en la comunidad[21] y ha sido reconocido como abogado destacado al brindar servicios legales gratuitos a través del Programa Pro-Bono para los años 2008, 2011, 2012, 2014, 2015 y 2016.

En cuanto al licenciado Pietri Torres, este indicó en su Moción en torno a posición del querellado sobre recomendación de la Comisionada Especial, entre otras cosas, que: (1) fue un error de juicio lo que ocurrió y que está profundamente arrepentido; (2) no trató de justificar su conducta, sino que intentó explicar cuál fue su proceso mental; (3) la quejosa no sufrió daño alguno, ya que obtuvo el remedio que solicitó del tribunal; y (4) no hubo ánimo de lucro. Así, solicitó que

---

abogacía, este Tribunal podía imponer sanciones disciplinarias más severas.

[20] En cuanto a esto último, no surge del expediente que el licenciado Pietri Torres se haya lucrado.

[21] Surge del expediente de la querella que el licenciado Pietri Torres sometió declaraciones juradas de la Lcda. Margarita Rentas Font y del Lcdo. Rafael Riefkohl Marcano.

este Tribunal lo amonestara o censurara enérgicamente.

Examinados los factores expuestos previamente, y en consideración a la conducta objeto de esta queja, suspendemos inmediatamente al licenciado Pietri Torres del ejercicio de la abogacía por un término de cuatro (4) meses. Se le impone el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándolos y devolverles cualesquiera honorarios recibidos por trabajos no realizados. Deberá además informar inmediatamente de su suspensión a los foros judiciales y administrativos en que tenga asuntos pendientes. Por último, deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de 30 días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiere conllevar que no se le reinstale cuando lo solicite.

Notifíquese personalmente al señor Pietri Torres esta Opinión *Per Curiam* y Sentencia.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Armando F. Pietri Torres
    (TS-11,646)                  CP-2016-8

SENTENCIA

En San Juan, Puerto Rico, a 11 de diciembre de 2018.

Por los fundamentos antes expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, se suspende inmediatamente al licenciado Pietri Torres del ejercicio de la abogacía por un término de cuatro (4) meses.

Se le impone el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándolos y devolverles cualesquiera honorarios recibidos por trabajos no realizados. Deberá además informar inmediatamente de su suspensión a los foros judiciales y administrativos en que tenga asuntos pendientes. Por último, deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de 30 días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiere conllevar que no se le reinstale cuando lo solicite.

Notifíquese personalmente al señor Pietri Torres esta Opinión *Per Curiam* y Sentencia.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco hubiera suspendido al Lcdo. Armando F. Pietri Torres por dos meses. El Juez Asociado señor Colón Pérez hace constar la siguiente expresión:

"El Juez Asociado señor Colón Pérez concurre con el resultado alcanzado por una mayoría de este Tribunal en el día de hoy. Ello, dado a que, si bien coincide en que el  licenciado Armando F. Pietri Torres infringió los Cánones 21 (intereses encontrados), 28 (comunicación con la parte contraria) y 38 (preservación del honor y la dignidad de la profesión) del Código de Ética Profesional, 4 LPRA p. IX, y que, en consecuencia, procede su suspensión del ejercicio de la abogacía, no está de acuerdo con que su sanción se limite a un término de cuatro (4) meses. A juicio de éste, la conducta desplegada por el licenciado Pietri Torres -- quien ya en el pasado en *In re Pietri Torres*, 191 DPR 482 (2014), había sido amonestado por este Tribunal por haber violado lo dispuesto en el Canon 18 de Ética Profesional, *supra*, y también apercibido de que de volver a incurrir en conducta impropia sería sancionado de forma más severa -- ameritaba su suspensión del ejercicio de la abogacía por un término de, como mínimo, seis (6) meses. No podía el licenciado Pietri Torres hacer caso omiso al referido apercibimiento."

El Juez Asociado señor Kolthoff Caraballo no intervino.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo